# Pennsylvania Railroad Co. *versus* Shay.

1. It is error to submit a question of fraud to a jury to overturn a written instrument upon slight parol evidence.

2. The evidence of fraud in such cases must be clear, precise and indubitable, otherwise the case should be withdrawn from the jury. A mere scintilla of evidence is not sufficient to take a case to the jury.

3. Since parties are allowed to testify on their own behalf, it has become still more necessary that this important rule should be strictly adhered to and enforced.

4. The son of the plaintiff below was killed by the defendant's train while walking on a railroad track. In consideration of the defendant's paying the funeral expenses, the plaintiff signed a release, under seal, of all damages for his son's death. He afterwards brought suit for damages and endeavored to invalidate the release on the ground of fraud. The court below charged that the evidence of fraud was too slight to justify the jury in setting aside the release, but left the question of fraud to them upon the evidence: *Held*, that this was error, and that the case should have been withdrawn from the jury.

May 26th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Dauphin county:* Of May Term 1876, No. 98.

This was an action on the case, brought November 14th 1874, by Shay against the Pennsylvania Railroad Company, to recover damages for the death of his son, about ten years of age. At the trial before Henderson, J., it appeared that on the morning of June 6th 1874, a passenger train on the defendant's road, passing through a sparsely settled district within the city limits of Harrisburg, ran over and killed the plaintiff's son while walking upon the defendant's track; further, that as soon as the engineer observed the boy upon the track every possible effort was made to stop the train. It was admitted that the train hands were competent men, and that the track and train and everything about them were in perfect order. The only negligence attributed to the defendant was that the speed of the train was excessive, and in contravention of the city ordinance regulating the speed of trains. It did not appear that the boy had any right to be upon the track. He was apparently prevented from hearing the train that struck him by the noise made by another train, passing in the opposite direction upon another track. As a complete defence to the action the defendant offered in evidence the following paper:—

[Pennsylvania Railroad Co. v. Shay.]

"PENNSYLVANIA RAILROAD COMPANY, ――――――――――― Dept.

1874                    To Oliver Shay, Harrisburg, Dr.
June    For the amount, and for the account stated
            in the following release:

|  | Dollars | Cents |
|---|---|---|

Know all men by these Presents that I, Oli-
ver Shay, in consideration of the sum of Sixty
nine Dollars & fifty cents—to me paid by the
Pennsylvania Rail Road Company, do hereby
release and forever discharge the said Company
from all liability to me, for or on account of
the accident to my son, resulting in his death,
by being struck by Niagara Exp. West, June
6th 1874, near Lochiel Iron Works.

Witness my hand & seal the 18th day of
June 1874.

Witness Present, }
ROBT. E. WILLIAMS. }  OLIVER SHAY, [L. S.]

"I certify that the above account is correct, and duly authorized.
                        G. CLINTON GARDNER,
                                    Gen'l Supt."

"The above account is duly authorized; it has been examined by
me, found correct, and is hereby approved.
                                            Dis.
                        "THOS. R. DAVIS, Auditor.

Received, June 18th 1874, of Thomas T. Firth, Treasurer of the
Penn. R. R. Co., Sixty-nine $\frac{50}{100}$ Dollars in full of the above account.
$69.50.                              OLIVER SHAY."

The defendant then rested.

In rebuttal the plaintiff offered to prove that he could neither
read nor write, and did not know the contents of the paper signed
by him, and understood it to be simply a receipt for the funeral
expenses of his son, and did not intend to release his claim for
damages.    To this offer the defendant objected : 1. Because the re-
ceipt was in writing and under seal, and could not be contradicted by
the plaintiff. 2. Because it was an offer to show that the plaintiff
signed the paper without reading it or asking to have it read to
him, which would be evidence of such gross carelessness as would
prevent his attempting to repudiate it.   The evidence was admitted
under exception on the ground that "if the plaintiff was induced
to sign through a false representation by the defendant's agent,
and believed that it was only a receipt for the funeral expenses paid
by the company, it would be competent for him to show that the
paper or release was thus procured in fraud of his rights."   Shay

[Pennsylvania Railroad Co. *v.* Shay.]

then testified as follows : " After boy was killed, too poor to bury. I went to see Williams; I asked him if the company will bear the expense of burying the boy. Telegraph. He told me he will bury. He told me to tell Mr. Boyd to come to depot. He looked after the funeral. Mr. Roal came for me to house. Mr. Williams. I went to see him, paper lying before him ; he told me here is receipt of funeral. I signed and he paid me. I can't read or write. (Release shown witness.) This is my name. I may have signed it twice."

R. E. Williams, the subscribing witness, was then re-called by the defendant and testified as follows :—

" I saw the old gentleman the day after the accident. He asked me what to do as to funeral expenses. I answered back if Shay would sign a release, releasing the company from all damages for his boy, I would pay the funeral expenses. Mr. Shay didn't object to it ; he said he would do so. I then notified Mr. Boyd what had transpired and he went ahead with funeral. I notified Mr. Lockard that Mr. Shay had no objections to sign release when sent. Shay came and I explained why I wanted him to sign twice. He took paper and held it up for two minutes. I then explained it to him and he signed. Got the check cashed for him ; I read the release portion of it to him. I have the telegram from Mr. Lockard ; I communicated the contents of it to Shay."

This telegram was then placed in evidence as follows :—

" R. E. Williams.                    Philadelphia 6. | 6.
You had better leave the parents of the boy contract for his coffin and funeral expenses. You can say to them that if they desire you will ask the Co. to defray the expenses after the funeral is over ; if you find you can settle the matter by paying the expenses we will do so, but will take a release.

(Signed) W. F. L."

The defendant requested the court to charge among other things as follows :—

14. The release signed by the plaintiff being in full of all damages occasioned by the death of the plaintiff's son, it bars the plaintiff's right to recover in this case.

15. It is not competent for the plaintiff, by his own testimony alone to invalidate a release in writing signed by himself.

The court, after charging generally on the subject of plaintiff's and defendant's negligence, proceeded as follows :—

" We come now to the release ; this we say to you is in law what it purports on its face to be—a release by the plaintiff to the defendant for all damages by reason of, or arising out of, the death of this boy by the alleged accident on defendant's railroad ; it is in writing ; it is signed ; it is under seal ; it is witnessed. The con-

[Pennsylvania Railroad Co. v. Shay.]

sideration is expressed in the writing and imported by the seal. It is valid in law and a complete bar, and full defence to the plaintiff's right to recover in this case, unless you are satisfied from the evidence that he was induced to sign it by false statements or fraudulent representations, that being ignorant, he was deceived as to the contents of the paper, that it was not read to him and its import and effect misrepresented to him, so that the execution of the release was a fraud upon him. Whilst the credibility of the witnesses and the weight of the evidence is for you, we do not hesitate to say that we fail to see any sufficient evidence to justify the jury in a conclusion of fraud to set aside the written evidence, the release in this case. You have on the one hand attacking the release—the plaintiff, the party in interest, he stands alone and seeks to set aside his solemn deed. He says it was only intended by him as a receipt, but you will observe he signed twice, he says he can neither read nor write, but you will have the paper out with you, and may examine his signature, what he admits he wrote. He says the paper was not read to him, but Williams, the witness to the execution, says he read over and explained it to him, and that it was executed in pursuance of an understanding or agreement that he was to execute it, if the defendant would pay the funeral expenses. If there is any truth at all in the testimony of Williams, a witness, it is true, in the employ of the defendants, but he is in no way interested directly in the result of this suit, it overcomes, certainly meets squarely the testimony of the plaintiff. It explains, and when we consider that the defendant claimed immunity from any damage, it explains the small amount in the release, simply the funeral expenses, which were all that they would consent to pay. But even if we set off oath against oath, we must then let the paper speak for itself, and so speaking does it not deny the right of the plaintiff to recover in this action."

The jury found a verdict for the plaintiff. After judgment thereon the defendant took this writ of error, assigning for error the refusal of the court to answer the defendant's fourteenth and fifteenth points as requested, and that portion of the charge given above.

*Hall & Jordan,* for plaintiff in error.—The rule of *law* is that extrinsic evidence cannot be admitted to contradict or vary a written instrument, especially one under seal: Lighty v. Shorb, 3 Penna. 450; Monongahela Nav. Co. v. Fenlon, 4 W. & S. 205; Rearick's Ex'rs v. Rearick, 3 Harris 66. This rule is particularly important since the Evidence Act of 1869. In equity, fraud or mistake, plainly made to appear by clear, satisfactory and convincing proof, may be shown. The only evidence of fraud was the plaintiff's, and the rule of evidence in equity is that where there is oath against oath the denial must prevail: Brawdy v. Brawdy, 7 Barr 157; Ballentine v. White, 27 P. F. Smith 20; Rogers v. In-

[Pennsylvania Railroad Co. v. Shay.]

surance Co., 6 Paige 583; Commercial Bank v. State Bank, 4 Ed. Ch. 32.

The fact that the plaintiff below could not read, does not entitle him to relief: Seeright v. Fletcher, 6 Black 380; May v. Johnson, 3 Indiana 449; 2 Stark. Ev. 374; Greenfield's Estate, 2 Harris 489; Hallenbeck v. Dewitt, 2 Johns. 404; Sherwood v. Salmon, 2 Day 136. The evidence of fraud must be clear: Irwin v. Shoe-maker, 8 W. & S. 75; Dean v. Fuller, 4 Wright 474; Stine v. Sherk, 1 W. & S. 195; Iddings v. Iddings, 7 S. & R. 111. Especially since the Evidence Act of 1869: Martin v. Berens, 17 P. F. Smith 459. Parol evidence was not admitted in Jarvis v. Palmer, 11 Paige 650; Strong v. Dean, 55 Barb. 337; Stearns v. Tappin, 5 Duer 294; Piersons v. Hooker, 3 Johns. 68; Van Brunt v. Van-Brunt, 3 Ed. Ch. 14.

*J. C. McAlarney* and *J. W. Simonton*, for defendant in error. —The part of the charge assigned for error was strongly for the defendant below; the court could not refuse to let the evidence go to the jury, being the evidence of a competent witness. This was a legal defence, and therefore Ballentine v. White, 27 P. F. Smith 27, does not apply.

Mr. Justice SHARSWOOD delivered the opinion of the court, June 2d 1876.

The only error assigned is to the charge of the court on the subject of the release by the plaintiff given in evidence by the defendant. Its execution was not denied. It was submitted to the jury to find whether it was obtained by fraud. There was no evidence given upon the trial, as far as appears upon this record, to justify such a submission. The learned judge himself said in his charge: " Whilst the credibility of the witnesses and weight of evidence is for you, we do not hesitate to say that we fail to see any sufficient evidence to justify the jury in a conclusion of fraud to set aside the written evidence, the release in this case." Why then should it have been submitted? The scintilla doctrine has been long exploded. If, believing the plaintiff's witnesses, there was not enough upon which to found a reasonable conclusion, it is not a question of the weight of evidence, but there is no evidence at all.

Putting aside entirely the testimony of Williams, the subscribing witness, who swore that Shay had agreed before to execute such a release if he was paid the funeral expenses of his child; that he read to him the release portion—explained it to him; that he thereupon took the paper in his hand for two minutes and then signed; there was nothing in Shay's own testimony to raise the question. All he said was: " I went to see him (Williams)—paper lying before him; he told me here is receipt of funeral. I signed and he paid me. I can't read or write. (Release shown witness.) This is my name. I may have signed it twice. The paper was not read to

[Pennsylvania Railroad Co. *v.* Shay.]

me." He does not pretend that he told Williams that he could not read and asked to have it read or explained. There was nothing untrue in what he says Williams told him. Below the release was a receipt for the funeral, which he also signed. As he wrote his name, Williams had a right to presume that he could read, and had read it. He was not required to read or explain it to him, unless requested. As is said by Chief Justice GIBSON, in Greenfield's Estate, 2 Harris 496, "If a party, who can read, will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law." Shay did not even deny that he knew what he was signing; that it was a release of all his claim upon the company in consideration of a sum of money sufficient to pay the funeral expenses. It has been more than once held that it is error to submit a question of fraud to the jury upon slight parol evidence to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable; otherwise it should be withdrawn from the jury: Stine *v.* Sherk, 1 W. & S. 195; Irwin *v.* Shoemaker, 8 Id. 75; Dean *v.* Fuller, 4 Wright 474. Since parties are allowed to testify on their own behalf, it has become still more necessary that this important rule should be strictly adhered to and enforced.                                Judgment reversed.