Ogden *v.* Philadelphia & West Chester Traction Company, Appellant.

*Evidence—Parol evidence to vary writing—Release of damages—Negligence—Street railways.*

Where a chancellor would not reform or ought not to reform a written instrument, because of the doubtfulness of the parol evidence to set it aside, he should not permit twelve chancellors in a jury box to nullify it.

Where a conductor who has been injured on the line of a street railway company which employed him, invites to his room two officials of the company and executes in their presence and in the presence of his wife, a paper prepared by the officials at the time and read over to him, by which he releases the company from all liability for his injuries in consideration of $20.00, and of the further sum of $1.50 for each day that he may be confined in the house, and is paid such sums, he is not entitled in a subsequent suit against the company on an alleged parol agreement made at the time of the written agreement and alleged to be the inducement for the execution of the same, to have his case submitted to the jury, where he testifies that the parol agreement was that the company should employ him at $1.50 per day for the rest of his life, and this testimony, corrobo-

rated by his wife, is absolutely denied by the two officials of the company. In such a case the fact that the company did give him other light employment and offered to continue to employ him as a tollgate keeper, is not corroborative of the alleged parol agreement, where it appears that it was the uniform custom of the company to give to disabled employees such work as they could perform.

An agreement by a street railway company to employ a disabled employee the rest of his life at $1.50 per day, is incapable of enforcement because of utter want of precision in its terms.

Argued Jan. 23, 1902. Appeal, No. 289, Jan. T., 1901, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1900, No. 1420, on verdict for plaintiff, in case of John Ogden v. Philadelphia & West Chester Traction Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestezat and Potter, JJ. Reversed.

Assumpsit on an alleged parol contract. Before Pennypacker, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Error assigned* amongst others was in refusing binding instructions for defendant.

*S. Davis Page*, with him *S. K. Louchheim*, for appellant.— Where the written contract purports to contain the whole agreement between the parties, parol evidence is not admissible to vary or contradict it in the absence of proof of any fraud, accident or mistake in its execution: Jackson v. Payne, 114 Pa. 67 ; North & Co. v. Williams, 120 Pa. 109 ; Wyckoff v. Ferree, 168 Pa. 261 ; Dickson v. Hartman Mfg. Co., 179 Pa. 343 ; Naumberg v. Young, 44 N. J. Law, 331 ; Ivery v. Phillips, 196 Pa. 1 ; Gibson v. Western New York, etc., R. R. Co., 164 Pa 142 ; Penna. R. R. Co. v. Shay, 82 Pa. 198 ; Arthurs v. Bridgewater Gas Co., 171 Pa. 532 ; Wojciechowski v. Spreckels' Sugar Refining Co., 177 Pa. 57 ; Seeley v. Citizens Traction Co., 179 Pa. 334 ; Bruns v. Union Traction Co., 185 Pa. 533 ; Kane v. Chester Traction Co., 186 Pa. 145.

*W. Horace Hepburn*, for appellee.—That an executory agree-

ment made at the time of the signing of a written agreement, and upon the faith of which it was executed, may be shown by parol, and that a recovery may be had upon it, would seem to be settled by the following cases: Campbell v. M'Clenachan, 6 S. & R. 171; Weaver v. Wood, 9 Pa. 220; Watterson v. Allegheny Valley Railroad Co., 74 Pa. 216; Powelton Coal Co. v. McShain, 75 Pa. 245; Shughart v. Moore, 78 Pa. 469.

Viewing the contract of employment as an oral promise or undertaking made at the time of the execution of the pencil writing, which induced the appellee to put his name to it, the appellee submits that, having proven the oral promise by two witnesses and corroborating circumstances, under all the cases the question was one for a jury: Greenawalt v. Kohne, 85 Pa. 369; Juniata Building & Loan Association v. Hetzel, 103 Pa. 507; Smith v. Harvey, 4 Pa. Superior Ct. 377; Ferguson v. Rafferty, 128 Pa. 337; Clinch Valley Coal & Iron Co. v. Willing, 180 Pa. 165; Cullmans v. Lindsay, 114 Pa. 166.

OPINION BY MR. JUSTICE DEAN, May 19, 1902:

The plaintiff, John Ogden, had been conductor on a trolley car of defendant for two months prior to March 2, 1899. On that day his car jumped the track and he was seriously injured, but continued to work out the remainder of that day and for the two days following. On March 10, while confined to his room, J. H. Gibson, superintendent of the company, and H. H. Aikens, clerk to the president, visited Ogden, at his invitation in his room, where after some conversation with reference to his injuries, he signed and delivered to them this paper:

"PHILADELPHIA, March 10, 1899.
"PHILADELPHIA & WEST CHESTER TRACTION COMPANY,

"Gentlemen: In consideration of twenty dollars paid by you to me this day, the receipt of which is hereby acknowledged by me, and the further understanding that you pay me the further sum of one and 50–100 dollars for each day I am confined to the house, I hereby release your company and the companies over whose tracks you operated, from all liability for the accident which happened to me by reason of your car jumping the track going east of Milltown Hill, on March 2, 1899, in which accident I was seriously injured. This is intended to be a gen-

eral release of all liability on your part for the injuries which I have sustained in said accident, no matter what the result of the same may be.

"JOHN OGDEN."

The execution and delivery of this paper is not disputed. But Ogden alleged that it did not contain all the stipulations of the company in his favor and that there was an oral agreement on the part of the company made at the same time, as a further inducement to its execution, and without such oral stipulation he would not have signed it. He testifies, that at the same time the release was signed, Gibson, representing the company, agreed that the company would, in addition, pay his doctor bill, and from the time he was able to get out of the house, would employ him at $1.50 a day for the rest of his life. In this statement he is corroborated by the testimony of his wife. There were but two others present when the paper was executed, Gibson and Aikens. Both of them testify, positively, that no other consideration was promised than that contained in the paper, called a release, and that paper was read to and understood by Ogden. It was the custom of the company to keep the places of employees injured in its service open for them, or to give them such other work as they could perform when disabled. Ogden was employed in a ticket office for the greater part of the time after he was able to leave his room until the following November. His wages, including $1.50 per day while confined to the house, amounted to $368.68, about $1.50 per day for the whole period. The summer ticket office in which he had worked was closed for the winter in November; the company then offered to employ him as a tollgate keeper on a turnpike under its control and pay to him $6.00 per week, with house rent free, but this he declined to accept. It was perfectly willing to give him back his place as conductor, but he alleged, that on account of his injuries, he was physically unable to perform its duties. No other employment was offered him and he did not remain in the company's service.

The court below submitted the conflicting testimony to the jury to find: First, whether there was an oral agreement such as plaintiff claimed? Second, if so, then was it broken by defendant? Third, if broken, then what damages was plaintiff

entitled to ? The verdict was for plaintiff in the sum of $2,500, and defendant appeals, preferring nine assignments of error.

The denial by the court of defendant's fifth prayer for instructions, it seems to us, raises the crucial question on this appeal. That prayer was as follows :

" 5. The written contract signed by plaintiff on the 10th of March, 1899, in the presence of John H. Gibson and H. H. Aikens, having been prepared by Gibson in the presence of plaintiff after a conversation with him, and having been signed by the plaintiff after such contract was read and explained to him, its terms cannot be varied or altered by any conversation had with the plaintiff before the execution of the same, unless it clearly appears that such conversation would supply the terms of the contract omitted either through fraud, accident or mistake, of which in this case there is no evidence."

The evidence is not contradicted, that the paper was read to Ogden. By its terms, it is full and complete; there was expressed a substantial consideration which was fully paid. There is no testimony that the additional oral consideration induced Ogden to execute the paper, as assumed by the learned judge in his charge. There is the evidence of Ogden and his wife, that in the conversation between Gibson and the husband before signing, Gibson said that Ogden would be employed the rest of his life at $1.50 per day ; both Gibson and Aikens flatly deny that any such conversation took place; it does appear from other evidence in the case, that it was well understood, that this employer from dictates of kindness, and perhaps to encourage loyalty on the part of its employees, kept open the places of the latter for them until recovery from injuries received in its service, or furnished other employment when partial disability occurred ; and such custom is not perhaps unusual with employers ; this plaintiff was furnished with lighter employment for months after his injury and was then tendered another position for which his weakness did not incapacitate him ; but this last he declined to accept. This subsequent conduct of the employer is not, as the learned judge of the court below seemed to think, corroborative of the alleged oral agreement; it proves nothing tending to sustain a legal claim on an alleged express contract. Plaintiff's whole case rests on the oral testimony of himself and wife. The superintendent

went to Ogden's house at Ogden's request; the company did not follow and solicit him to execute a release. The interview was at the solicitation of Ogden, who thought the company ought to aid him because of his disability. This agreement or release was for the very purpose of putting in writing the result of their negotiations. It says, in the concluding sentence after specifying the obligation of the company to pay $1.50 per day while he is confined to the house, "this is intended to be a general release of all liability on your part for the injuries which I have sustained in said accident, no matter what the result of the same may be."

This agreement, in effect, is a legal obligation on the part of the company to pay Ogden, approximately, $100 computing the time he was confined to the house, for which he was to receive $1.50 per day; in consideration, Ogden executes to the company a sweeping release from all further claim. He now avers, that he, by an oral contract made at the same time, was to receive in effect, as a further consideration, the amount of this verdict, $2,500 more. Why was not this large additional consideration inserted in the writing? A careful scrutiny of the testimony shows no reason whatever; the paper was read to and must have been fully understood by him. The inference from the testimony is, either that plaintiff did not want the oral agreement embodied in the writing, or that it had no existence. As is said in Dickson v. Hartman Manufacturing Co., 179 Pa. 343, "There was no omission through fraud, accident or mistake; there was no ambiguity in the language of the contract; there had been established no business usage which threw light on the intention of the parties and there was nothing to explain. The alleged parol agreement was at variance with the written contract." The evidence to set aside or add to this written instrument as in Penna. R. R. Co. v. Shay, 82 Pa. 198, Ivery v. Phillips, 196 Pa. 1, Stull v. Thompson, 154 Pa. 43, and many other cases, must be "clear, precise and indubitable." The writing was just what the parties wanted, for both with full knowledge of its terms consented. Considering the husband and wife as two witnesses, and Gibson, superintendent, and Aikens, secretary to the president as two, the testimony was in equilibrio; in any view, the conclusion of fact from it would be of doubtful correctness; but

then as affecting the credibility of the witnesses, we have the substantial money interest of husband and wife in the verdict, and whatever partiality the two officers may have felt for their company. On a bill to reform the instrument, and that was substantially the condition of the case, when the plaintiff in answer to the written release, set up the oral agreement, a chancellor on the evidence would have dismissed the bill, because the evidence was not " clear, precise and indubitable." Here the court below submitted the evidence to the jury.

If this written agreement can be thus varied by oral testimony, we cannot conceive of any writing which cannot be brushed aside by the mere oath of interested witnesses, with no circumstances of corroboration, and in the face of flatly contradictory testimony. We have no inclination to disturb the authorities cited by appellee's counsel from Campbell v. McClenachan, 6 S. & R. 171, down to Clinch Valley Coal & Iron Co. v. Willing, 180 Pa. 165. We do say, however, that the measure of proof necessary to warrant the destruction of a written instrument in the case before us, is not reached. The case presents most, if not all of the features of Railroad Company v. Shay, supra. In that case, it was sought to set aside a written release of all damages, by oral testimony limiting a general release to one only for funeral expenses, and the court submitted the evidence to the jury to find the facts ; the jury promptly set aside the writing and found for plaintiff. On appeal to this court the judgment was reversed, SHARSWOOD, J., who delivered the opinion, saying : " The evidence of fraud must be ' clear, precise and indubitable', otherwise it should be withdrawn from the jury. Since parties are allowed to testify on their own behalf, it has become still more necessary that this important rule should be strictly adhered to and enforced." Before the act of 1869, while generally adhered to, there are some cases reported which can scarcely be reconciled with the rule and these cases are cited. by appellee. The leading case decided in 1820, opinion in a dozen lines by TILGHMAN, C. J., decides that " to refuse performance of a verbal promise after having made use of it to get the plaintiff's signature to the agreement is a trick of which the law will not permit the defendant to avail himself." The court below rejected evidence positively proving the trick, and on this ruling the judgment was reversed. Whether, if admitted, the whole evidence would have been

" clear, precise and indubitable" we do not know, but the decision has been used in more than one instance since, as a rule applicable to facts outside its scope, and not without some embarrassment to us.    But as Justice SHARSWOOD suggested in Shay v. Railroad, supra, more than twenty-five years ago, we have been endeavoring since to more strictly adhere to it, not without some measure of success.    Where a chancellor would not reform or ought not to reform a written instrument because of the doubtfulness of the parol evidence to set it aside, he should not permit twelve chancellors in a jury box to nullify it.

But another question is fairly raised by the evidence bearing on defendant's fifth point.    What was the oral contract sought to be enforced ?    It was alleged by plaintiff, he was to be " employed by the company at $1.50 per day the rest of his life." Assume, that this had been undoubtedly proven, are the terms of the contract such that it could be enforced ?    He admits he was not to be pensioned in idleness at $1.50 a day for life, but was to be employed,—at what?    He admits he would not act as conductor because of disability, but alleges that in such event he was to have lighter work.    But who was to judge what work accorded with his physical condition?    It is not averred that the company was to provide him a place in a store or on a police force, or some other place outside of its own service. He declined the place of tollgate keeper ; at one time he said, because his wife did not want to live in the tollhouse ; at another, because he did not want to displace the then occupant of the position.    He did not even allege, the work was not light enough for him to perform.    Surely, even under the contract as he alleges it, this was sufficient attempt on the part of the company to perform its alleged promise.    The place he should fill was not to be determined alone by his judgment, or his tastes, or his whims.    There is no provision in the alleged oral agreement for determining the precise nature of his employment; no surgeon or examining board was provided to pass upon his physical vigor ; neither he nor the company was named as having the right to determine the character of his employment ; the contract was one incapable of enforcement because of utter want of precision in its terms, and for that reason, as well as for the first one given, a verdict should have been directed for defendant.

The judgment is reversed.