## Baranski *v.* Wilmsen, Appellant.

*Negligence—Master and servant—Defective machine—Paper cutting machine.*

1. In an action by an employee against his employer for the loss of a thumb and four fingers of the plaintiff's right hand while he was working at a paper cutting machine, the case is for the jury, where the evidence shows that the machine was out of order at the time of the accident, that the defendant was previously notified of its defective condition, and that his failure to repair the defect was the cause of the accident.

*Negligence—Master and servant—Release—Fraud—Evidence—Case for court.*

2. In an action by an employee against his employer to recover damages for personal injuries, where the defendant offers in evidence a release of damages in the English language for the stated consideration of $95.00, a finding that the release was procured by the defendant's fraud cannot be sustained, where it appears that the plaintiff was forty-four years old, that the release was executed three weeks after the accident, that the plaintiff was then in full possession of all his mental faculties; that although he did not understand English he did understand German in which language the release was discussed; that he did not ask to have the release explained to him in German; that he testified that he was to receive as consideration for executing the release $9.50 for ten weeks, and after that steady work; that he was paid $95.00 and given steady employment for two years and four months thereafter; that he was then

discharged after the statute had run, for an alleged violation of a rule against smoking; that he denied that he had violated the rule after warning, and that he had never returned or tendered back the $95.00.

Argued Oct. 16, 1913.  Appeal, No. 132, Oct. T., 1913, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1912, No. 5,297, on verdict for plaintiff in case of George Baranski v. Bernard Wilmsen.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Reversed.

Trespass to recover damages for personal injuries. Before SULZBERGER, P. J.

The facts are stated in the opinion of the Superior Court.

The jury returned a special verdict which was as follows:

1. Was the machine out of order at the time of the accident, and was the defendant previously notified of this defect, and did he fail to repair, and was this failure the cause of the accident?  *Answer:* Yes.

2. Did the defendant procure the plaintiff to sign and seal the release by fraud?  *Answer:* Yes.

3. What was the plaintiff's damage?  *Answer:* $1,500.

The court subsequently refused motion for judgment for defendant non obstante veredicto, and entered judgment on the verdict for the plaintiff.

*Error assigned* among others was in refusing motion for defendant non obstante veredicto.

*William G. Wright,* for appellant.—The cause of action sued on did not grow out of the alleged fraud; therefore the statute of limitations was not tolled: Mitchell v. Buffington, 10 W. N. C. 361; Young v. Kline, 21 W. N. C. 443.

There was no evidence of fraud to take the case out of the statute: Hobbs v. Brush Electric Light Co., 75

Mich. 550; Brighton v. Railway Co., 103 Mich. 420; Stearns v. Railway Co., 112 Mich. 651; Carter White Lead Co. v. Kinlin, 47 Neb. 409; Harrington v. Railway Co., 60 Mo. App. 223.

The defendant was not estopped to urge the statute of limitations by any breach of contract: Stewart v. McBurney, 33 Pits. L. J. 207; Armstrong v. Levan, 109 Pa. 177; Renackowsky v. Detroit Board of Water Commissioners, 122 Mich. 613; Hobbs v. Brush Electric Light Co., 75 Mich. 550.

The release was a bar to the action: Clark v. Lehigh Valley R. R. Co., 24 Pa. Superior Ct. 609; Pennsylvania R. R. Co. v. Shay, 82 Pa. 198; DeDouglas v. Traction Co., 198 Pa. 430; Hicks v. Harbison-Walker Co., 212 Pa. 437.

The fact that the machine misbehaved on this one occasion is no evidence of a defect. In order to establish negligence a defect must be shown: Shaffer v. Haish, 110 Pa. 575; Hemscher v. Dobson, 220 Pa. 222; Higgins v. Fanning Co., 195 Pa. 599; Houston v. Stamping Co., 38 Pa. Superior Ct. 93.

*Michael J. Geraghty,* for appellee.—Appellant had knowledge of defect in machine, but failed in his duty to repair it, and to warn appellee of its dangerous condition: Leonard v. Nazareth Cement Co., 49 Pa. Superior Ct. 535; Patterson v. Harrisburg Trust Co., 211 Pa. 173; Burt v. Jessup Steel Co., 229 Pa. 562.

The release of appellee was procured by imposition and misrepresentation, and was vitiated by fraud: Clark v. R. R. Co., 24 Pa. Superior Ct. 609; Brooks v. First Presbyterian Church, 128 Pa. 408; Julius v. Traction Co., 184 Pa. 19; Clayton v. Traction Co., 204 Pa. 536; Spritzer v. Penna. R. R. Co., 226 Pa. 166; Mowry v. National Protective Society, 27 Pa. Superior Ct. 390; Schwartzfager v. Pittsburg, etc., Ry. Co., 238 Pa. 158.

The statute of limitations could not be invoked by

appellant by whose intrigue appellee was dissuaded from bringing his action within two years: Kalin v. Wehrle, 36 Pa. Superior Ct. 305; Cloyd v. Reynolds, 44 Pa. Superior Ct. 81; Roseburg's Est., 47 Pa. Superior Ct. 255; Bricker v. Lightner, 40 Pa. 199; Armstrong v. Levan, 109 Pa. 177; Semple v. Callery, 184 Pa. 95.

OPINION BY RICE, P. J., February 20, 1914:

This action of trespass was brought on August 20, 1912, to recover damages for personal injuries sustained by the plaintiff on June 15, 1909, while in the service of the defendant. The assignments of error are to the refusal of the defendant's point for binding direction and of his subsequent motion for judgment in his favor non obstante veredicto. The principal contentions of the defendant are, first, that there was no evidence of his negligence warranting submission of the case to the jury; second, that the action was barred by the defendant's release, under seal, executed on July 7, 1909; third, that it was barred by the statute of limitations.

The facts relating to the accident which the jury could find from the evidence are clearly and fairly stated by the appellant's counsel substantially as follows: In the defendant's factory was a paper cutting machine with a knife about four feet long, used to cut thick piles of paper. There is a flat table with two standards at the sides in which the knife moves up and down. The machine is driven by an electric motor to which a crank or eccentric is attached. When the clutch is pulled tight the knife comes down in a vertical and sliding way so that it comes on the top of the paper and pulls across the paper at the same time. The clutch is pulled tight by hand lever at the left of the machine. When the lever is pulled the clutch is tightened and the operation of the power brings the knife down. When the lever is released the clutch is loosened and the knife returns to its position about eight inches above the table. The plaintiff was ordered by the defendant's

superintendent to cut some toilet paper in this machine. He placed the paper on the table, pulled the lever with his left hand, and the knife came down cutting the paper. Having released the lever, the knife went up. He then placed his left hand by his side and his right hand under the knife to pull out the paper, when the knife came down again without his moving the lever and cut off the thumb and the four fingers of his right hand. The plaintiff had worked at the machine for nearly a year, though only from five to ten minutes each day, and during that time it had not repeated while he was operating it. But there was uncontradicted testimony of a competent expert that when the machine is in order the knife will not come down unless the lever is pulled. There was, also, the testimony of another workman that, on two occasions, about six weeks before the accident, when the machine was being operated by him, the knife came down without the lever being pulled. He says that he told the defendant's foreman of the fact, whereupon the latter tried the machine and the same thing happened with him.

It is not necessary to refer in greater detail to the plaintiff's evidence, or to mention the particulars in which the evidence adduced by the defendant is in conflict with it. It is sufficient for present purposes to show that there was evidence which, if believed by the jury, warranted their special findings that the machine was out of order at the time of the accident, that the defendant was previously notified of its defective condition, and that his failure to repair the defect was the cause of the accident. These facts established actionable negligence on the part of the defendant. They distinguish the case from Hemscher v. Dobson, 220 Pa. 222, and other cases of that class, where the only evidence of negligence was the happening of the accident, or the self-starting of the machine once, and that on the occasion of the accident, and bring it within the principle of several adjudicated cases in which recoveries

of damages for injuries to employees, resulting from the erratic self-starting of machines known by the employer to be defective, were sustained. Amongst these cases are: Sopherstein v. Bertels, 178 Pa. 401; Patterson v. Harrisburg Trust Co., 211 Pa. 173; Gerding v. Standard Pressed Steel Co., 220 Pa. 229; Valentine v. Colburn, 10 Pa. Superior Ct. 453; Houston v. Budke Stamping Co., 38 Pa. Superior Ct. 93.

The foregoing conclusion renders it necessary to consider the question, whether there was sufficient competent evidence to sustain the special finding by the jury that the defendant procured the plaintiff to sign and seal the release by fraud. The release is a typewritten paper in English and reads as follows:

"Whereas I George Baranski . . . . was injured on or about the 15th day of June, 1909, while in the employ of B. Wilmsen under circumstances which I claim render my said employer liable to me in damages; and whereas my said employer denies any liability for said injuries; and whereas both parties desire to compromise, and have agreed to adjust and settle the matter for the sum of ninety-five 00/100 dollars: Now therefore, in consideration of said sum which it is hereby acknowledged has been to me or in my behalf paid by my said employer I do hereby release and forever discharge my said employer, his agents and employees, from any and all liability by reason of said injuries. Witness my hand and seal this 7th day of July 1909 at Phila., Pa.

"GEORGE BARANSKI (Seal).

"M. PRETZFELDER,
"SAMUEL G. FRIEDMAN,
              "Witnesses."

The finding of the jury rests solely on the uncorroborated testimony of the plaintiff. At the time of the accident he was forty-four years old, and had lived in this country about four years. He is a Pole and could

not read or write English, but he understood and could speak German, which was the language spoken at the execution of the release. This was three weeks after the accident, and, so far as appears, he was then in full possession of all his mental faculties. Upon this subject that is, his condition and the circumstances at the time of executing the release, the following excerpt from the opinion of Mr. Justice STEWART in Spritzer v. Penna. R. R. Co., 226 Pa. 166, may be very appropriately quoted: "The least that can be required of one who attempts by his own uncorroborated testimony, to escape from the binding force of a written agreement, which he admittedly executed, on the ground that at the time of its execution he did not understand the nature and character of the act in which he was engaged, is a direct, positive and unequivocal statement from him that such was his attitude and condition of mind. If he was so far mentally incompetent that he is without recollection of the transaction, he can say so; if affected to a degree which leaves his memory of the transaction obscure and uncertain, he can say so; if surrounding conditions at the time he executed the paper were such as to preclude sensible and deliberate action, or make him the easy subject of fraud and imposition, and these were practiced upon him by misrepresentation or concealment, he is free to state all the facts in connection therewith. Where a party under such circumstances asserts nothing distinctly with reference to his mental condition at the time inquired of, testifies to nothing from which the degree of mental impairment, if any, can be discovered with even reasonable certainty, or nothing warranting an inference that his condition, whatever it was, was employed to extract from him an unconscionable bargain, and the case rests on his testimony alone, he has no right to an issue before a jury on the question of whether his contract is to be enforced against him or set aside." The plaintiff testified that he was called to the defendant's office where he met

the defendant's superintendent, Pretzfelder, and two other men, and was told or asked to sign this paper, which was then lying on the table. He says it was not read or explained to him in German or in Polish. Nor did he ask to have it read or explained. True, according to his testimony, he asked the superintendent to bring an interpreter, and the latter declined to do so. But this fact has little significance, certainly not enough to warrant an inference of fraud when it is considered that the plaintiff understood and spoke German, the language in which the superintendent addressed him, and did not ask the superintendent to explain the paper in German. We now quote from his testimony the several versions he gave of what the superintendent said to him at the time he asked or told him to sign the paper.

"Mr. Pretzfelder said, 'I will give you $9.50 for ten weeks steady and after that I will give you steady work.'"

Then at the request of counsel he gave the German words used by Pretzfelder, which the court interpreter translated: "I will give you nine dollars and fifty cents, and after that you will have to come here and I will give you some work."

Later, being asked what was said about the paper, he answered: "Nothing at all, except Mr. Pretzfelder told me 'I will give you $9.50 and after that I will give you steady work.'"

In reply to a question by the court as to why he signed the paper, he answered: "He said to me in the German language" (giving the German words which the court interpreter translated) "'here is the paper and you will receive nine dollars and fifty cents a week your pay day and you have sign this paper,' that is what he said to me."

Upon cross-examination defendant's counsel asked him: "Mr. Pretzfelder told you to sign that paper?" To which the plaintiff replied: "'It is a paper that you will get your pay.' And I believed him and I signed it."

We remark with regard to this statement of Pretz-
felder, that it was not inconsistent with the paper it-
self as to the pecuniary consideration, or with the plain-
tiff's testimony on that subject.  He was to receive
$9.50 a week for ten weeks, which amounted to the
precise pecuniary consideration mentioned in the paper.

In the leading case relating to such releases, Penna.
R. R. Co. v. Shay, 82 Pa. 198, it was said by Mr.
Justice SHARSWOOD, quoting from Chief Justice GIBSON
in Greenfield's Est., 14 Pa. 489: "If a party, who can
read, will not read a deed put before him for execution;
or, if being unable to read, will not demand to have it
read or explained to him, he is guilty of supine negli-
gence, which, I take it, is not the subject of protection,
either in equity or at law."  This is still the general
rule, and it precludes impeachment of the release unless
the defendant's fraud prevents its application.  "The
presumption in favor of the integrity of an instrument
of this kind is not lightly overcome.  Nothing short of
evidence precise, clear and indubitable can be allowed
to overturn a written instrument.  When it does not
come up to this measure, the case should be withdrawn
from the jury: Penna. R. R. Co. v. Shay, 82 Pa. 198;
Gibson v. R. R. Co., 164 Pa. 142; De Douglas v. Trac-
tion Co., 198 Pa. 430:" Spritzer v. Penna. R. R. Co.,
226 Pa. 166.  Since parties are allowed to testify in their
behalf it has become still more necessary that this im-
portant rule should be strictly adhered to and enforced:
Penna. R. R. Co. v. Shay, 82 Pa. 198.  When the terms,
"clear, precise, and indubitable," are used by the courts
in defining the requisite proof of a particular fact to be
made out by oral testimony, it is meant that it shall
be found that the witnesses are credible, that they dis-
tinctly remember the facts to which they testify, that they
narrate the details exactly, and that their statements are
true: Spencer v. Colt, 89 Pa. 314.  These familiar and well-
settled principles, for which very many other cases could
be cited, if necessary, require that the plaintiff's uncorrob-

orated evidence be carefully scrutinized, and therefore we have quoted it verbatim so far as it relates to what was said and done at the execution of the paper. It will be noticed, in the first place, that the several versions he gives of what was said are discrepant, not only in verbiage, but in substance. This can be said without questioning his honesty, but not without casting doubt upon the distinctness of his recollection and the exactness of his statements. But, passing these discrepancies, the objection remains that his fullest statement of what was said, namely, "I will give you $9.50 for ten weeks steady and after that I will give you steady work," was not a representation of the contents of the instrument or of its nature. The most that can be said of it is, that it was a promise on the part of the defendant to do certain things in the future if the defendant would sign the paper. The defendant does not even deny that he knew that the paper he was signing was a release. Why should such a matter be left to inference or surmise? But assuming that he signed it without knowing that it was a release, or that it bound him to anything, the evidence does not warrant the further assumption that the defendant fraudulently concealed the fact from him by misrepresentation or otherwise: hence, the release, as well as the statute of limitations (Act of June 24, 1895, sec. 2, P. L. 236), was a bar to the action, unless both of these defenses were rendered ineffective by what occurred after the execution of the paper.

The facts to be noticed in the consideration of that question are as follows: After the execution of the release the defendant paid the plaintiff $9.50 a week for ten weeks, this being the full amount of the pecuniary consideration mentioned in the paper, and then took and retained the plaintiff in his employment, giving him steady work and paying him the stipulated wages for a period of two years and four months more. The defendant then discharged him, giving as the reason that he had violated a rule prohibiting smoking of

cigarettes in the factory. The plaintiff admitted that he had smoked cigarettes in the building, but asserted that he had not done so after he had been warned that he would be discharged if he repeated the act. There being no testimony to the contrary, it must be assumed, for present purposes, that the jury could find that the cause alleged for his discharge did not exist. But we remark, in the same connection, that there is no warrant in the evidence for the supposition that taking and retaining him in the defendant's employment was part of a cunningly devised plan to keep him from suing until after the statute of limitations had run. Whatever else may be said as to their effect, it is impossible to understand how the promise to give the plaintiff steady work and his discharge can be regarded as a fraud. As was said in Stewart v. McBurney, 1 Sadler, 234, s. c., 33 Pitts. Leg. Journal (16 N. S.), 207: "At the best, it was not and could not be anything more than a broken promise. But a mere breach of contract is not a fraud. It is a civil wrong, for which the party injured may recover appropriate damages, but that is all. A refusal to convey a tract of land, after having contracted to do so, is no more a fraud than a refusal to pay a promissory note or a merchant's bill for goods sold and delivered." The court was speaking of fraud which would toll the statute of limitations. But the principle is just as clearly and entirely opposed to the supposition that the discharge of the plaintiff was a fraud which reached back and vitiated the compromise agreement.

Reliance is placed by appellee's counsel on Armstrong v. Levan, 109 Pa. 177, in which it was held, that, where within six years after a right of action in tort accrues a parol promise made to pay if suit be not brought, such promise tolls the statute of limitations, and that in such case it runs from the date of the promise. That decision was put on the ground of estoppel, not on the ground that the promise and its breach constituted actual fraud. We are not convinced that the principle is

applicable here, but we need not express a decided opinion upon that question, for, even if it is applicable, it goes only to the defense of the statute of limitations.

It may be said that, though the plaintiff's execution of the release was not procured by fraud, yet the defendant's promise to give him steady work was part of the consideration, which has failed and, therefore, applying the law of accord and satisfaction, the plaintiff was entitled to rescind the compromise agreement and sue on the orginal cause of action. Schwartzfager v. Pitts., etc., Ry. Co., 238 Pa. 158, which is cited in support of this proposition, differs from the present case in many material respects. Reference to these differences will sufficiently indicate our reasons for thinking that the case does not apply. There, the part of the defendant's undertaking that was not performed was expressed in the writing itself; it did not depend on the uncorroborated parol evidence of the plaintiff as to what was said at the execution of the paper. Here, everything that the writing obligated the defendant to do was done. In that case, the plaintiff indicated his intention to rescind, by tendering back to the defendant the full amount he had received, while the plaintiff here made no offer to repay, which, in general, is necessary before suing on the original cause of action, if the other party did not procure the execution of the agreement by fraud, which is not the case here: Gibson v. W. N. Y. & P. R. Co., 164 Pa. 142; Laird v. Union Trac. Co., 208 Pa. 574; 1 Cyc. of Law & Pro. 339. Another important distinction between the two cases is, that in the case cited there was no ambiguity in the contract as to the duration of the defendant's obligation to pay wages— it was "until he recovers, able to work—to do day's work at his trade," while here the parol promise which is set up to affect the writing (in effect, to reform it) was simply to give the plaintiff "steady work." This was not the same in form or substance, as a promise to give him "steady and permanent" work. Those words

used in conjunction might, perhaps, be construed to mean employment as long as the promisee is able, ready, and willing to perform such services as the other party may have for him to perform. See 36 Cyc. of Law & Pro. 1258, n. 16. But the words "steady employment," standing alone, do not naturally imply duration of employment at the will of the employee, and, in the absence of other evidence than appears here, it cannot be inferred that such was the actual intention of the parties.

Our conclusion is, that nothing occurred after the execution of the release which prevented the defendant from relying on it as a complete defense to the present action.

The judgment is reversed and the record is remitted with direction to enter judgment for the defendant.