## Leonard v. Edward G. Budd Manufacturing Co.

*Hugh Roberts,* for claimant.

*Herbert C. Marvin,* for defendant.

CRUMLISH, J., November 23, 1938.—Hubert J. Leonard, the above-named claimant, on November 10, 1923, while an employe of Edward G. Budd Manufacturing

Company, was seriously and painfully injured. Subsequently, claimant accepted lighter work which involved only the use of his hands and which yielded him a fixed weekly wage in an amount less than that he had earned at his trade prior to the accident. This arrangement continued for 10 years, terminating in 1934.

On June 20, 1937, claimant filed a claim for compensation for personal injuries under The Workmen's Compensation Act of June 2, 1915, P. L. 736, and its amendments. The defense was the statute of limitations. Claimant contended that defendant's conduct amounted to fraud which tolled the statute of limitations; that the statute did not begin to run until discovery of the fraud; and that the fraud was first discovered when he consulted his counsel in 1937. The referee dismissed the petition, disallowing the claim on the ground that it was barred by the provisions of The Workmen's Compensation Act, supra, with regard to limitations. An appeal therefrom to the Workmen's Compensation Board was taken and the referee's order was affirmed and that appeal dismissed. Exceptions to the findings of the Workmen's Compensation Board are now before us on appeal.

Claimant testified that he sustained his injury during either the month of October or November of 1923, while in the employ of defendant. The injuries were sustained when a load of metal fell across his legs severely cutting and bruising them. He was treated in defendant's dispensary for a number of weeks and then given light work at a fixed but reduced weekly wage. He was thus employed by defendant for about 10 years, off and on from 1923 until May 1934, when he was laid off by defendant company. The record discloses the following facts in support of claimant's position:

"By REFEREE:

Q. In your petition you say there was fraud in this case, what do you mean?

A. They told me they would take care of me.

Q. When you say "they", who do you mean?

A. Dr. MacIllvaine was the head doctor, and he says to Dr. Humphries—

Q. Now, did Dr. MacIllvaine tell you they would take care of you for life?

A. Dr. Humphries told me they would take care of me.

Q. What do you mean?

A. By giving me a job, by keeping me on the payroll, that was the fraud, they wouldn't let me file anything.

Q. Did you try to file anything?

A. Yes, they told me they would take care of me.

Q. Did you try to file a petition?

A. Yes.

Q. When?

A. At that time.

Q. With whom did you try to file it?

A. I told them I could get compensation but they told me they would take care of me.

By REFEREE:

Q. You were let out in 1934?

A. Yes, I wasn't fired, they laid me off and they didn't take me back.

Q. Why didn't you file a petition until three years after the date you were laid off, you had the time to do it then, there was no fraud then, nobody intimidated you after you were let out of the plant, they couldn't stop you then?

A. Yes, I went back and expected to go back again but every time I go they were filled up and said they did not need me just now.

Q. Why didn't you file a petition during those three years?

A. I didn't know at the time I could file a petition. They said they would take me on when they got busy.

Q. They did not even in the three years you were out?

A. Yes, and Dr. MacIllvaine was still there and I told him I wanted work and he beat it away, and took out the

files and the nurse told him that the man that hires you, Sterling, that he had it, and he didn't take care of me.

By MR. ROBERTS:

Q. Did you know your legal rights until you consulted your present attorney?
A. No.
Q. When did you first consult me, sometime this year?
A. About that.

By MR. MARVIN:

I want this stricken, it is not relevant.

By THE REFEREE:

Let it remain in the record, and grant an exception.

By MR. ROBERTS:

Q. It was in 1937, you said you came to see your counsel?
A. 1937."

We have given claimant's position careful consideration and have examined all the cases cited by his learned counsel. We are thoroughly in accord with the proposition laid down in these authorities that in case of fraud, the statute of limitations runs only from date of discovery of fraud or from when with reasonable diligence there ought to have been discovery: Smith v. Blachley, 198 Pa. 173; Deemer et al. v. Weaver, Executrix, 324 Pa. 85.

At first blush, it would appear that this case is controlled by Ratto et al. v. Pennsylvania Coal Co., 102 Pa. Superior Ct. 242, 247, wherein, after pointing out the difference between the application of the statute of limitations in cases affecting the remedy and those affecting a statutory right, the court held:

"The legislature [Workmen's Compensation Act] did not prescribe how or when the question of the bar of the statute must be raised. We are of opinion that it was its intent to make the filing of the claim petition within the specified time an express condition of the right to

obtain an award of compensation, and that failure so to do should operate as an absolute bar of the right."

However, an examination of that case discloses that there was "nothing in the record justifying a suggestion that the employer was in any way responsible for the long delay in bringing the proceedings to an issue." We, therefore, conclude that our examination is limited to determination of whether or not the delay in bringing the proceedings to an issue was caused by defendant's conduct.

We are in sympathy to a great extent with the view expressed by the board and we are regretfully constrained to agree with the conclusions of the referee and the board. A very careful examination of the facts relied on by claimant in the light of the legal principles involved leads us to the conclusion that there was no fraud actively persisted in by defendant which tolled the statute of limitations.

In Baranski v. Wilmsen, 56 Pa. Superior Ct. 153, 163 (1914), plaintiff instituted an action on August 20, 1912, to recover damages for personal injuries sustained on June 5, 1909, while in the employ of defendant. Defendant offered in evidence a written release of damages for the stated consideration of $95, executed three weeks after the accident. Plaintiff testified that he was to receive as consideration for executing the release $9.50 for 10 weeks, and after that steady work; that he was paid $95 and given steady employment for two years and four months thereafter; and that he was then discharged, after the statute had run, for an alleged violation of a rule against smoking. It was there contended that defendant's conduct amounted to fraud and that the action for damages was not barred by the statute of limitations. In holding that the employer's conduct, which was similar to that of defendant in the instant case, did not amount to fraud which would bar the statute, the court said:

". . . there is no warrant in the evidence for the supposition that taking and retaining him in the defendant's

employment was part of a cunningly devised plan to keep him from suing until after the statute of limitations had run. Whatever else may be said as to their effect, it is impossible to understand how the promise to give the plaintiff steady work and his discharge can be regarded as a fraud. As was said in Stewart v. McBurney, 1 Sadler, 234, s. c., 33 Pitts. Leg. Journal (16 N. S.), 207: 'At the best, it was not and could not be anything more than a broken promise. But a mere breach of contract is not a fraud. It is a civil wrong, for which the party injured may recover appropriate damages, but that is all.' "

Nor does the principle that where evidence fails to reveal actual fraud, the conduct of one party in inducing the other to allow the statute of limitations to run against him in reliance on a promise of settlement estops the former party from claiming the protection of the statute, established in Armstrong v. Levan, 109 Pa. 177 (1885), help the claimant. The evidence fails to disclose a promise. The doctor whose authority to bind defendant was not shown, merely stated that "they would take care of" claimant. Moreover, this principle is inapplicable in the instant case for two reasons: (1) It was considered in Baranski v. Wilmsen, supra, and expressly held not to apply to a set of facts almost identical with those under consideration; and (2) it has no application in cases involving statutory rights where, as here, the limitation of time is contained in the statute conferring the right.

Accordingly, we hold that the petition is barred by the limitations contained in The Workmen's Compensation Act, supra, and that the exceptions must be severally overruled.

### Order

And now, November 23, 1938, the exceptions filed to the order of the Workmen's Compensation Board affirming the referee's dismissal of the petition are severally overruled and the appeal is dismissed. Judgment is hereby entered in favor of defendant and defendant insurance carrier and against claimant.