# Thompson, Receiver, Appellant, *v.* Schoch.

*Evidence—Written agreements—Variation by parol—Character of evidence—Sales—Stock—Corporation contract—Power to make —Estopped.*

1. In order to prove a contemporaneous parol agreement which is alleged to have induced the execution of a writing which is sought to be enforced, the witnesses in support of the alleged parol contract must be credible and their examination must show them to have a distinct recollection of the relevant facts and, in so far as their evidence must be mutually corroborative, they should, to a reasonable degree, show a common understanding of the particular matter in question. Their testimony must be clear, precise and

indubitable before it can be permitted to overcome the documentary proof to which it is opposed.

2. In an action on a due bill given for mining stock the defense attempted to prove an alleged contemporaneous parol contract to the effect that the maker of the due bill was not to be required to pay the amount of the obligation unless and until he should dispose of the stock mentioned therein at a price sufficient to give him a profit, and that he should not sell for a period of two months from the date of the due bill, but could at any time return the stock and get back the due bill. The testimony of the defendant contained discrepancies and contradictions. The evidence of the other witnesses went no further than to prove that the writing was given upon the understanding and agreement that defendant was not to be called upon to pay for the stock until he could sell it at a price sufficient to liquidate the amount due, and realize some profit therefrom. It appeared that for a period of twenty-nine days after the date of the due bill defendant could have sold the stock at a profit, but did not do so. The defendant's version of the agreement, that the stock could not be sold for two months after the date of the due bill, was not corroborated. *Held,* that the evidence was not so clear, precise and indubitable as to overcome the writing, and a judgment for defendant was reversed, and judgment for plaintiff n. o. v. was entered.

3. Where in such case it appeared that the legal plaintiff was a corporation which had passed into the hands of a receiver, the fact that such dividends as had been declared by the legal plaintiff were not paid to the defendant was not material as the receiver was authorized to distribute among the stockholders only upon surrender of their stock certificates, and the defendant did not attempt to make such surrender.

*Due bill—Interest.*

4. In such case plaintiff was entitled to recover interest not from the date of the due bill but from the date when payment thereof was demanded.

5. In such case, where it is alleged that the parol contract was made by a director who was a member of the Executive Committee delegated to sell the treasury stock, and the evidence shows that the stock was returned to this director apparently for the purpose of securing from the treasurer of the company a return of the due bill, but it does not appear that the treasurer accepted the alleged surrender of the stock, and he declined to return the due bill, saying be had no authority to do so without the sanction of the board of directors. *Held,* that plaintiff was not estopped by such return of the stock.

6. The question as to the authority of any one representing the company to make the alleged parol contract suggested in the opinion of the Supreme Court but not decided.

Argued April 10, 1916.   Appeal, No. 337, Jan. T., 1915, by plaintiffs, from judgment of C. P. Columbia Co., Dec. T., 1912, No. 158, on verdict for defendant, in case of E. M. Thompson, Receiver and Trustee of Nevada Copper Mining and Smelting Company, now to the use of Charles E. Miller, Jr., v. A. Z. Schoch.   Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.   Reversed.

Assumpsit on a due bill.   Before EVANS, J.

The opinion of the Supreme Court states the facts.

Verdict for defendant and judgment thereon.   Plaintiff appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*John G. Johnson,* with him *Thomas H. Low* and *H. Montgomery Smith,* for appellant.—The evidence of the terms of the oral agreement relied upon to defeat the writing was not so clear, certain and specific, so persuasive in character, so free from contradiction and so intrinsically probable that the judicial mind could rest upon it with the conviction that the ends of justice would be subserved by giving it effect as the basis of a decree were the court sitting as a chancellor in equity in proceedings to reform the instrument: Highlands v. Philadelphia & Reading R. R. Co., 209 Pa. 286; Ogden v. Philadelphia & West Chester Traction Co., 202 Pa. 480; Phillips v. Meiley, 106 Pa. 536; Ahlborn v. Wolf, 118 Pa. 242; Williamson v. Carpenter, 205 Pa. 164; Fuller v. Law, 207 Pa. 101; Gandy v. Weckerly, 220 Pa. 285; Faux v. Fitler, 232 Pa. 33; Hoffman v. Bloomsburg & Sullivan R. R. Co., 157 Pa. 174; Longenecker v. Zion Evangelical Lu-

theran Church, 200 Pa. 567; Barnski v. Wilmsen, 56 Pa.
Superior Ct. 153; Thomas v. Loose, 114 Pa. 35; Ferguson v. Rafferty, 128 Pa. 337; Sutch's Est., 201 Pa. 305;
Penna. R. R. Co. v. Shay, 82 Pa. 198; Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519; Juniata Bldg. &
Loan Assn. v. Hetzel, 103 Pa. 507; North & West Branch
Ry. Co. v. Swank, 105 Pa. 561; Honesdale Glass Co. v.
Storms, 125 Pa. 268; Irvin v. Irvin, 142 Pa. 271.

*Fred Ikeler,* with him *John G. Harman* and *A. W.
Duy,* for appellee.—The contemporaneous parol agreement relied upon was established by sufficient competent
evidence to require its submission to the jury: Honesdale Glass Co. v. Storms, 125 Pa. 268; Highlands v.
Philadelphia & Reading R. R. Co., 209 Pa. 293; Smith
v. Harvey, 4 Pa. Superior Ct. 377; White v. Black, 14
Pa. Superior Ct. 459; Burt v. Burt, 221 Pa. 171; Ott v.
Oyer's Executrix, 106 Pa. 6; Boyertown Nat. Bank v.
Hartman, 147 Pa. 558.

OPINION BY MR. JUSTICE MOSCHZISKER, July 1, 1916:

This suit was instituted by E. M. Thompson, receiver
and trustee of the Nevada Copper Mining and Smelting
Company, to the use of Charles E. Miller, Jr., against A.
Z. Schoch, to recover on the following written instrument: "Bloomsburg, Pa., October 22d, 1906.  Due W.
M. Hoagland, Treas. Nevada Copper M. & S. Co., Thirty-
Six Hundred dollars ($3,600) for 2,000 shares stock in
said Company in name of A. Z. Schoch and Samuel Wigfall, 1,000 each.  (Signed) A. Z. Schoch."  Judgment
was entered on a verdict for the defendant, and this appeal followed.

The plaintiff proved the above writing; that, by judicial decree in the State of Maine, the Nevada company
had been formally dissolved and E. M. Thompson appointed receiver and trustee thereof, with power "to collect by suit or otherwise all outstanding debts or claims
due said corporation"; further, that such receiver had

been duly authorized to "commence suits or actions at law or equity for the collection of all moneys or other property of said corporation."   The main defense was an attempt to prove an alleged contemporaneous parol contract to the effect that Mr. Schoch was not to be required to pay the amount of his written obligation unless and until he disposed of the stock mentioned therein at a price sufficient to give him a profit, and that he should not sell for a period of two months from October 22, 1906, but could at any time return the stock and get back his acknowledgment of indebtedness.   The defendant contended he had signed the due bill on the faith of this alleged contemporaneous agreement, and that, being unable to sell, in October, 1907, he gave back the stock and requested the return of his obligation, which request was, in effect, refused; therefore, he claims the action in the court below to be a fraudulent use of the writing in suit, which, under our authorities, entitles him to relief.

There are several points in the case, but the most important one concerns the sufficiency of the evidence to sustain the defense relied upon, particularly to prove the alleged parol agreement.   The writing in suit is a clear, definite and unqualified acknowledgment of indebtedness, signed by the defendant, which implies a promise to pay immediately upon demand; and, in order to overcome the strong prima facie case thus made for the plaintiff, the burden was on the defendant to present proof as clear and convincing in character.   It is contended, however, that the evidence offered for this purpose was too indefinite, uncertain and contradictory to establish either the terms of the alleged parol agreement or to prove it was the inducement for the execution of the written obligation; and, furthermore, that the defendant, had he seen fit, could have sold the stock at a figure which would have netted him a substantial profit.

It is established with us that the testimony of a defendant, standing alone, is insufficient materially to

modify the plain terms of a written instrument sued upon; that, before such testimony can be permitted to have this effect, it must be corroborated by other witnesses or proof of confirmatory attending circumstances.  This rule applies even when the testimony is offered to prove a contemporaneous parol agreement which is alleged to have induced the execution and delivery of the writing sought to be enforced, if the former is at variance with the latter; and when a contract of this nature is adduced, its terms must be proved by clear, specific, and indubitable evidence.  In other words, in order to sustain such defense, the evidence relied upon, taken as a whole, must be so persuasive in character, so free from self-contradiction or material internal variances, and so intrinsically probable, that the judicial mind can rest thereon with a conviction that the ends of justice would be served by giving it effect as the basis of a decree reforming the writing in suit.  That is to say, the witnesses in support of the alleged contemporaneous parol contract must be credible and their examination must show them to have a distinct recollection of the relevant material facts; and, in so far as their evidence must be mutually corroborative, they should, to a reasonable degree, show a common understanding of the particular matter in question.  In brief, their testimony must be clear, precise and indubitable before it can be permitted to overcome the documentary proof to which it is opposed; and, in cases of this kind, after measuring the evidence relied upon according to proper legal standards, a court should never permit a jury to do what it would not sanction if sitting as a chancellor.  These are the principles which must govern the present review: Phillips v. Meily, 106 Pa. 536, 544; Hoffman v. Bloomsburg & Sullivan R. R. Co., 157 Pa. 174, 195-7; Ogden v. Philadelphia & West Chester Traction Co., 202 Pa. 480, 485-6; Williamson v. Carpenter, 205 Pa. 164; Fuller v. Law, 207 Pa. 101, 104; Highlands v. Philadelphia & Reading R. R. Co., 209 Pa. 286, 292; Gandy v. Weckerly,

220 Pa. 285, 288-93; Faux v. Fitler, 232 Pa. 33; see also
Potter v. Grimm, 248 Pa. 440, for a recent discussion of
the abstract right to vary a written contract by proof of
a parol agreement.

Three witnesses were called to prove the alleged agree-
ment at bar.   The first of these, Mr. Hoagland, testified
that, at the date of the due bill, he was the secretary and
treasurer of the Nevada company; that E. B. Tustin,
who carried on the transactions with the defendant, was
a director and member of the executive committee of this
corporation; that the witness, upon inquiry as to why
Mr. Tustin "received a due bill instead of cash," was in-
formed by the latter that "he had made an arrangement
with Mr. Schoch......to this effect, that if the stock
was sold by Mr. Schoch at a profit why he was to pay the
due bill, otherwise the stock was to be returned."   Later,
in reply to the question, "Will you state again what Mr.
Tustin told you when he handed you that due bill?"   the
witness said Mr. Tustin had told him "that he had made
an arrangement with Mr. Schoch whereby he was to
send this stock to Mr. Schoch and if he could sell it, or
did sell it, at a profit, he was to pay the due bill, other-
wise the stock was to be returned."   Mr. Tustin was
next called.   He first said, "The understanding between
us was the stock was to be paid for after its sale, so that
he (Schoch) should have a chance to make some money
out of it."   Then he testified the stock was not to be
paid for out of profits, but from "the proceeds" of its
sale, and that it was understood Mr. Schoch should not
be called upon for payment until he had an opportunity
to dispose of the stock; but, when asked what the ar-
rangement was in the event of Mr. Schoch not being able
to sell, the witness replied, "There was not anything said
about that."   Subsequently, Mr. Tustin stated he did
not remember that anything was said about a possible
return of the stock, adding, "It was never presumed the
stock of the company would depreciate in value"; and,
although examined at some length, he shed no further

light upon this subject. When the same witness was asked the question, "In the contract with Mr. Schoch contemplating a possible sale, who was to judge of the time and price of that sale?" he answered, "There wasn't anything said about that." Mr. Schoch appeared in his own behalf. He stated the stock was sent to him without any prior understanding or request on his part (which Mr. Tustin denied) ; that, when he saw Mr. Tustin some days thereafter and asked why the stock had been sent, the latter replied, "Some one is going to have the benefit, you have favored me and I want you to have some benefit, at the proper time sell this stock and out of the proceeds pay for it"; that about two weeks subsequent to this conversation, on October 22, 1906, Mr. Tustin said he was requested by the treasurer of the company to secure some kind of a written acknowledgment, and suggested the defendant give his note, which the latter refused to do; that Mr. Tustin had then stated these conditions to the defendant: "I was not to pay for the stock till after its sale, and out of the proceeds I was to pay for the stock"; further, "the only condition he (Tustin) imposed was that I was not to sell the stock for two months." The defendant then said that Mr. Tustin tried to persuade him to give a written obligation, and assured him "repeatedly of this arrangement and that he would personally make himself responsible to me for any difficulty......or......responsibility I would have in the matter." Mr. Schoch further testified: "I finally agreed to give him a due bill, with the understanding or agreement, as we made it between us or as he proposed, that I was to hold this stock for two months and then out of the proceeds pay it and under no other conditions"; that he (Schoch) suggested these conditions be placed in the writing, but Mr. Tustin objected, so they were left out; that when he said to the latter, "Suppose I am not able to sell the stock at the price," Mr. Tustin replied, "All you have to do is to ask for the return of your certificate (due bill)' and it will be returned to

you;" and that, upon getting this assurance, he wrote, signed and delivered the due bill in suit.

In reading the evidence just reviewed, it will be observed that the first witness testified merely to what had been told him by Mr. Tustin, which was, in brief, that the due bill was signed and delivered upon the understanding that Mr. Schoch was to be given an opportunity to dispose of the stock and pay therefor out of the proceeds; and, if not sold, the stock could be returned at any time. The testimony of the second witness was to the effect that Mr. Schoch "should have a chance to make some money out of it [the sale of the stock]," liquidating his obligation out of the proceeds; further, that no provision was made concerning the due bill in case the defendant failed to realize enough to pay it, and that the witness did not remember anything was stated as to a possible return of the stock. Thus, to this point, the evidence went no further than to prove that Mr. Schoch gave the writing in suit upon the understanding and agreement that he was not to be called upon to pay for the stock until he could sell it at a price sufficient to liquidate the amount due and realize some profit therefrom.

Under a contract such as just indicated, the law would imply an obligation, within a reasonable time, to take advantage of a market which afforded an opportunity to sell at a price more than sufficient to meet the due bill. In this connection, the uncontroverted testimony shows that, for a period of twenty-nine days after October 22, 1906, the date of the obligation, the Nevada company's stock sold in the open market at $3 per share; that for some time thereafter the price fluctuated between $2 and $3; and, finally, it fell to twenty-five cents a share. This proves beyond a doubt that the defendant had a fair opportunity to make a reasonable profit by taking advantage of the open market, and, if the testimony of Mr. Hoagland and Mr. Tustin were the only evidence in the case, of necessity, the defense would fail; but, when the

testimony of Mr. Schoch is read, we find he said the alleged oral contract contained these conditions, (1) the stock was not to be sold for two months after the date of the due bill, (2) if, at the expiration of that time, he could not sell at a price sufficient to pay his obligation, he might hand back the stock and secure a return of the due bill; and, if these alleged facts were sustained by sufficient evidence, they might constitute a defense.

The difficulty with the defendant's case, however, is that he must point to clear, precise and indubitable evidence sufficient, both in character and substance, to sustain a finding that the alleged parol contract contained the two material conditions contended for by him, whereas, the only proof produced upon these points (particularly that the stock was not to be sold for a period of two months) was his own testimony, for, as already indicated, neither of the other witnesses depended upon by him gave any corroboration of these important features of the defense.   Moreover, in a letter written by the defendant, on October 14, 1907, returning the stock certificates to Mr. Tustin, he not only omits to say anything about the parol contract containing the conditions in question, but states the agreement thus: "This stock was taken with the understanding that, as we had been instrumental in aiding the sale of this stock at the time we—would—should—have it without paying for it until shuch a time as we could turn it at a profit."   In addition, on cross-examination, the defendant's story of the transaction was much weakened, and, when compared with the testimony of his own witnesses, in the words of the learned court below, "there were discrepancies and contradictions."   Under these circumstances, it cannot be said the verdict is sustained by clear, precise and indubitable evidence.

. While the defendant stated Mr. Tustin "was under obligations to me because I made him personal loans of considerable amounts," or "he may have considered himself under obligation to me because of my personal loans

to him," and the evidence showed that he (Tustin) was a director of the Nevada company, and a member of its executive committee, "delegated" to sell the treasury stock, nevertheless there is no testimony upon the record which indicates any express authority in this director, or in the executive committee as a whole, to make the special arrangement which the defendant claims was entered into with him, or to sell this treasury stock at other than "a price not less than $2 per share," which, of course, would mean $2 in cash or its equivalent; and it appears that, in fact, Mr. Tustin was directed by the treasurer of the corporation to "get cash." Therefore, a question might well be raised as to the authority of any one representing the Nevada company to make the alleged parol contract contended for by the defendant; but it is not necessary to pass upon that point, for, while it is evident there was a parol agreement of some sort, yet, in view of the variance in the testimony given by the several witnesses depended upon to prove the one alleged, and the lack of sufficient corroboration of the defendant's own version thereof, it is clear that "the measure of proof necessary to warrant the destruction of a written instrument" (Ogden v. Philadelphia & West Chester Traction Co., 202 Pa. 480, p. 486), i. e., the due bill in suit, was not reached in this case.

Although it appears that, in October, 1907, the defendant sent the stock to Mr. Tustin, yet the subsequent correspondence between them indicates this was done so the latter, acting for the former, might give the certificates to the treasurer of the Nevada company, and, if possible, get the due bill from him; but there is nothing to prove that Mr. Hoagland in any sense accepted a surrender of the stock, nor is it sufficiently clear that the certificates ever actually came into his possession; and it plainly appears he declined to return the defendant's written obligation, saying he did not have authority so to do without the sanction of the board of directors. Hence, on the proofs presented, it cannot be said the Nevada

company was in any sense estopped by a return and acceptance of the defendant's stock. Moreover, we do not think the opinion of the receiver, expressed to the court which appointed him, that the due bill had no value, can be given any material effect, for there is nothing to show this in any manner harmed the defendant; furthermore, the fact that the receiver did not surrender the due bill, but, by authority of court, passed it to a creditor, indicates that, after all, it must have been considered of some real value. Of course, the fact that no suit was brought till near the end of the statutory period, is of no particular significance; and all of these matters, together with the other points suggested by the defendant, whether taken singly or as a whole, have no real value as corroboration of his insufficient testimony concerning the alleged agreement that he was to hold the stock for a period of two months before attempting a sale thereof, which latter fact we have already determined it was essential for him to demonstrate by proof measuring up to the full requirements of the law, in order to sustain the verdict and judgment in his favor.

Since the legal plaintiff showed a right to sue on the obligation before us, it was not necessary for the use-plaintiff to prove his title thereto; but, if for any reason it could successfully be contended to the contrary, the evidence produced was sufficient to that end. Finally, the fact that certain dividends were declared by the legal plaintiff, which were not paid to the defendant, is of no controlling force, since the receiver was authorized to distribute assets to stockholders only "upon the surrender to him of their stock certificates"; and the defendant did not attempt to make such a surrender, apparently preferring to stand on his present defense, although he knew Mr. Hoagland had failed to return the due bill and that, in all probability, the certificates were still in the hands of Mr. Tustin. These dividends were not claimed as a set-off in the court below, and the question whether this could legally be done is not before us

at the present time.   On the evidence as presented, we conclude as a matter of law that the plaintiff was entitled to judgment in his favor, and the court below should have so instructed; he cannot, however, claim interest from the date of the due bill, as suggested in his sixth request for charge, but only from the time of the demand for its payment: Breyfogle v. Beckley, 16 S. & R. 264, 265; Jacobs v. Adams, Executor, 1 Dallas 52; Rayne, et ux., v. Guthrie & Wallace, 1 Addison 137.

All the assignments of error covering the points discussed in this opinion, which complain of rulings to the contrary of the views here expressed, are sustained; the judgment is reversed and the record is remitted to the court below, with directions to enter judgment against the defendant n. o. v. for the amount of the due bill, with interest as already indicated.