Schmitt, Appellant, *v.* William G. Johnston Company.

214

Argued May 2, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*A. Devoe P. Miller,* for appellant.

*James R. Van Kirk,* with him *W. W. Stoner* and *J. M. Stoner and Sons,* for appellee.

OPINION BY STADTFELD, J., June 28, 1939:

This is an appeal by plaintiff from a judgment entered non obstante veredicto in favor of defendant after a verdict for plaintiff.

The William G. Johnston Company, a Pennsylvania corporation, in the month of February 1930, informed its employees it was endeavoring to purchase two thousand shares of the company's stock and would offer the same to the employees at $95 a share.

The notice so given the employees was in the following form: "To the Employees of William G. Johnston Company: I wish to advise that the present Board of Directors are making an effort to purchase two thousand (2000) shares of the Company's stock, and we are giving you the opportunity to subscribe for this stock at $95 per share. The Board of Directors feel that this action is necessary in order to maintain our organization, thus preventing any merger or consolidation with any other concerns. The writer will be glad to talk to any or all, to whom this matter interests, at any time. Respectfully, (signed) Wm. A. Shields, President, William G. Johnston Company."

Pursuant to this communication to the employees, a large number subscribed for shares of stock in the company.

Charles R. Schmitt, the appellant, on March 4, 1930, subscribed in writing for ten (10) shares of the stock at $95 a share, and made certain payments thereon in cash and certain other payments were deducted from his salary from month to month over a period of years. The writing was in form following: "I agree, if my subscription is accepted, to subscribe for ten shares of capital stock of William G. Johnston Company and can pay down Fifty Dollars ($50), and agree to pay the balance on weekly installments for a period of five years. (signed) Charles R. Schmitt."

The company decided to issue stock to its employees for the amount each employee had paid in on his contract, and pursuant thereto Charles R. Schmitt was

issued and took delivery on February 6, 1936, of eight shares of the stock of William G. Johnston Company.

On July 25, 1936, Charles R. Schmitt was let out by the company. Thereafter, on October 1, 1936, suit was entered in assumpsit to recover $870 paid in on account of the contract. The action was based on an alleged promise by J. L. Maloney, Secretary and Treasurer of the defendant company, made at the time of the subscription agreement.

The case was tried three times. The third trial came on May 17, 1938, before SARAH M. SOFFEL, J. and a jury. The jury found a verdict in favor of the plaintiff for the entire sum claimed, and interest, or in the amount of $1,181.46.

On May 19, 1938, a motion was made by the defendant for judgment non obstante veredicto on the whole record, and also a motion for a new trial was filed. The motions were argued before the court in banc, and on June 28, 1938, a new trial was refused and judgment entered for the defendant. This appeal followed.

Plaintiff's amended statement on which he went to trial, averred that an oral, contemporaneous agreement was entered into by and between plaintiff and defendant, through its proper officer and agent, one J. L. Maloney, then Secretary and Treasurer of defendant corporation, who had authority in the premises, that if plaintiff as an employee would subscribe for stock and would make his payments thereon, out of his wages that the stock would issue to plaintiff, and if at any time his wages were reduced the payments would not need to be made; and that if the plaintiff was discharged or voluntarily withdrew from the company, that the company would reimburse him for any sum or sums that had been made by him on account of said stock; that the said verbal agreement was the moving cause for the subscription; that at the time of signing the said

subscription for stock, plaintiff requested the said J. L. Maloney to give him a writing setting forth the verbal agreement, but the said J. L. Maloney, with the intention of defrauding the plaintiff, stated that such a writing was not necessary, and plaintiff, relying upon the said representations of the said Maloney, mistakenly failed to have the verbal part of the agreement specified in writing by the said J. L. Maloney.

The plaintiff testified as to the agreement substantially in the language of the pleading. The plaintiff's testimony was totally uncorroborated by other witnesses as to the alleged fraudulent representations made to him prior to his signing the stock subscription agreement. He testified further that he knew as a fact that certain other persons had subscribed for stock under the same conditions as he did, who were refunded their money by the company after they ceased to be employees. He testified further that his wages had been reduced in February 1933, and that he was thereafter unable to make the regular payments, except one payment that was allowed to his credit in the pay of June 1934; that he was discharged on July 25, 1936. When questioned in regard to the mistake and asked this question: "You say you mistakenly failed to have this verbal agreement put in writing?" he replied: "I did." In answer to the question: "What was the mistake?" he replied: "I took his word for it. That was the mistake."

The plaintiff produced four individuals who had been employed by the defendant company, who testified that they had dealt with J. L. Maloney, the Secretary and Treasurer, and that he had made the same promises to them that were made to Schmitt. This testimony was admitted over objection of counsel for the defendant.

The frauds alleged consist of promises said to have been made to do certain things in the future or to refrain from doing certain things.

Parol promises to do something in the future or to refrain from doing something in the future and which contradict the pleaded writing, do not constitute fraud as that term is used in fraud, accident or mistake: *Fidelity Title & Trust Co., Trustee, v. Garland et al.,* 291 Pa. 297, 139 A. 876; *First National Bank of Hooversville v. Sagerson et al.,* 283 Pa. 406, 129 A. 333; *Evans v. Edelstein et al.,* 276 Pa. 516, 120 A. 473.

The only evidence of any fraud in this case appears in the story told by the appellant, totally uncorroborated, in his effort to avoid the consequences of a plain and unambiguous document. When questioned concerning the reasons for these refunds, he admitted that he knew that there were some mitigating circumstances in each instance showing the reason for such refund. Appellant further testified that he had no personal knowledge of any arrangement made by the company prior to the taking of the stock subscriptions from other employees as to such employees' receiving a refund upon reduction of wage or discharge from the company.

The entire testimony offered by the appellant is not of such clear, precise and indubitable nature as the court, if sitting as a chancellor, would consider sufficient to reform the written instrument.

In the case of *Thompson, Receiver, v. Schoch,* 254 Pa. 585, 99 A. 72, the Supreme Court, through Mr. Justice VON MOSCHZISKER, said, at pp. 589, 590: "It is established with us that the testimony of a defendant, standing alone, is insufficient materially to modify the plain terms of a written instrument sued upon; that, before such testimony can be permitted to have this effect, it must be corroborated by other witnesses or proof of confirmatory attending circumstances. This rule applies even when the testimony is offered to prove a contemporaneous parol agreement which is alleged to have induced the execution and delivery of the writing sought to be enforced, if the former is at variance

with the latter; and when a contract of this nature is adduced, its terms must be proved by clear, specific and indubitable evidence. In other words, in order to sustain such defense, the evidence relied upon, taken as a whole, must be so persuasive in character, so free from self-contradiction or material internal variances, and so intrinsically probable, that the judicial mind can rest thereon with a conviction that the ends of justice would be served by giving it effect as the basis of a decree reforming the writing in suit. That is to say, the witnesses in support of the alleged contemporaneous parol contract must be credible and their examination must show them to have a distinct recollection of the relevant material facts; and, in so far as their evidence must be mutually corroborative, they should, to a reasonable degree, show a common understanding of the particular matter in question. In brief, their testimony must be clear, precise and indubitable before it can be permitted and, in cases of this kind, after measuring the evidence relied upon according to proper legal standards, a court should never permit a jury to do what it would not sanction if sitting as a chancellor. These are the principles which must govern the present review ......" To a like effect is the decision of *Berardini v. Kay et al.*, 326 Pa. 481, 192 A. 882.

The evidence of the appellant did not meet the burden that was required of one attempting to overcome the effect of a written instrument such as he signed, on the ground of fraudulent representation.

The alleged oral agreement referred to hereinbefore is in direct conflict with the terms of the written agreement. The parol agreement does more than vary the terms of the written agreement, it utterly destroys it: *Second National Bank of Reading v. Yeager*, 268 Pa. 167, 111 A. 159; *Evans v. Edelstein et al.*, supra.

The appellant relies principally upon the case of *Friend v. Kuhn*, 316 Pa. 233, 175 A. 690. This was a suit against the endorser of a promissory note. The

endorser set up in her affidavit of defense that the note was executed without consideration solely for the plaintiff's accommodation, and that an officer of the plaintiff's bank told defendant at the time of the execution of the note that it would not bind her individually. On motion for judgment for want of a sufficient affidavit of defense, plaintiff contended that the defense thus interposed was barred by our modern parol evidence rule. Both the court below and the Supreme Court held the affidavit of defense sufficient and refused to give judgment for the plaintiff. On p. 235, Mr. Justice SIMPSON, who wrote the opinion, points out that the case does not involve the parol evidence rule at the present stage of the case, because "...... That rule which is a principle applying to the admissibility and effect of oral evidence, can have no applicability at the present state of the case ...... when questions relating to the admissibility and effect of evidence have not yet arisen."

Under the cases above recited, dealing with the question of parol evidence, it is held that all preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract, and fraud, accident or mistake must be averred and proved in order that the terms of such written contract may be added to or stricken from by parol evidence.

Appellant raises for the first time on this appeal, the question of the alleged oral agreement being a separate contract and the stock subscription merely collateral thereto. This matter was not raised in the trial of the case. We will not review a case on a different theory from that on which it was tried in the court below, nor will we consider other questions than those presented for determination at the trial. *C. Vernon Rettew Co. v. Heller,* 85 Pa. Superior Ct. 440, 444, 171 A. 293; *Howard v. Siegel,* 121 Pa. Superior Ct. 519, 525, 184 A. 272.

We believe the very able opinion of the trial judge in the court below fully supports the judgment entered.

Assignment of error is overruled and judgment affirmed.