## Bittinger's Estate

*William C. Hazlett*, for appellants.
*Thomas K. Scheller*, for respondents.

DAVISON, P. J., May 15, 1943.—On June 27, 1941, Eleanora Bittinger, a resident of Hamilton Township, this county, died, and on July 9, 1941, her alleged last will and testament, dated April 23, 1940, was admitted to probate by the Register of Wills of Franklin County,

and is recorded in will book, vol. 35, p. 331, and letters testamentary were issued to The National Bank of Chambersburg, the executor named therein. Said executor duly qualified as such and proceeded with the settlement of said estate, filed its first and final account, which was confirmed, and A. J. White Hutton, Esq., was appointed auditor to make distribution of the balance shown on said account.

After the death of said Eleanora Bittinger there was found among her effects a paper writing, alleged to be a will, in her handwriting, and signed at the end by her, bearing date May 17, 1914, which paper was delivered to said executor of the will already probated, and on July 14, 1941, said paper was handed by its attorney as such executor, to the Register of Wills of Franklin County, with a request that it be filed with the will theretofore probated, but there was no request at that time that it be probated. Said paper was so filed but not in any way admitted to probate.

When Mr. Hutton sat for the performance of his duty as said auditor the sister and brothers of the decedent appeared before him and claimed to be entitled to participate in the fund for distribution under the terms of said paper bearing date of May 17, 1914, and not probated, but were informed by the auditor that he could not make distribution under that paper, not probated. Said sister and brothers then requested the register of wills to probate the paper along with the will already probated, which he refused to do. An appeal was taken from the refusal of the register of wills to probate the paper bearing date of May 17, 1914, but no appeal was taken from the probate of the will dated April 23, 1940.

On this appeal an examiner was appointed by the court and a large amount of evidence was taken before him, the matter was fully argued by learned counsel on both sides before us, and the following decree of this court was entered:

"Now, 24th October, 1942, appeal dismissed at costs of appellants without prejudice to any other steps hereafter taken in said estate."

On January 13, 1943, Ethel Poorman, Martin Albert Kitzmiller, Charles Milton Kitzmiller and Harry Abram Kitzmiller, being the sister and brothers of said decedent and legatees under the paper dated May 17, 1914, filed their appeal from the decree of the register of wills admitting to probate said will dated April 23, 1940, and gave the bond required by law in such an appeal, which appeal was that same day certified by the register of wills to this court. This appeal was taken in accordance with section 16(a) of the Register of Wills Act of June 7, 1917, P. L. 415, which is as follows:

"The probate, or refusal of probate, by the register of the proper county of any will, or any other paper purporting to be a will or codicil thereto, shall be conclusive as to all property, real or personal, devised or bequeathed by such will or codicil or other paper, unless, within two years from the date of such probate or refusal of probate, those interested shall appeal from the decree of the register as herein provided: Provided, That all persons who would be sooner barred by this section taking immediate effect shall not be thereby barred before two years from the date hereof."

As the date of the probate of the will appealed from was July 9, 1941, the appellants acted within the time limited by said act and the appeal is properly before us. The appeal is based on the discovery and request for probate of a later will than the one already probated.

On February 6, 1943, appellants presented their petition to this court for a citation on the King Street United Brethren Church of Chambersburg, Pa., a residuary legatee named in both of said wills, and on The National Bank of Chambersburg, executor of said will dated April 23, 1940, to show cause why the de-

cree admitting said will to probate should not be opened and the will bearing date of May 17, 1914, the correct date of which was alleged to be May 17, 1941, should not be probated as the last will and testament of decedent, it being claimed to be a later will than the one heretofore admitted to probate. A citation was awarded as prayed for and an answer filed by the King Street United Brethren Church, but no answer was filed by the executor.

That the appeal in this case is the proper procedure and that if the will bearing date of May 17, 1914, is in fact a later will than the one whose probate is now appealed from the court has jurisdiction to make such order as will admit it to probate as decedent's last will and testament is clearly stated in Sebik's Estate, 300 Pa. 45, 47:

"We agree with the court below that, in a case like the present, where there has been a prior probate of a paper thereby accepted as the last will of the decedent, and an alleged testamentary writing bearing a later date is subsequently discovered, it is necessary, when the latter is not merely a codicil to the former, for its proponent to appeal from the earlier probate. On such appeal the orphans' court will take evidence to enable it to determine the issues involved and, if the paper offered for probate is in fact and law the last will of decedent, the court will make an appropriate order so that it may be probated accordingly."

The question now before us for decision is a narrow one, limited in its scope to one thing, that is, is the will which on its face bears date May 17, 1914, in fact a will executed after the date of the will heretofore probated April 23, 1940? If it is, then it, and not the probated will, is the last will and testament of Eleanora Bittinger and should be probated as such.

That the paper dated May 17, 1914, is sufficient to be probated as a last will of said decedent, standing

alone, cannot be questioned. It is in the form of a paper to take effect after her death, in her own handwriting, signed by her at the end of it, dated, and designated as her last will and testament as follows: "I will write my last desire as a will." If, therefore, it was executed at a later date than the probated will, it should be admitted to probate as the last will of decedent.

We are asked by appellants to hold that the correct date of the paper dated May 17, 1914, is May 17, 1941, and that change would make it a later will than the one whose probate is now appealed from.

That this court has the power to determine the correct date of a will under certain circumstances and with certain proof is correct. In Baum's Estate, 269 Pa. 63, the court said (p. 65) :

"The will under which the appellant claims all of her husband's estate was properly admitted to probate as a testamentary disposition of it: Baum's Est., supra; but whether effect can be given to that disposition concededly depends upon the actual date of the execution of the will, and, in distributing the balance in the hands of the accountant, that date was the vital question before the court below. That it had jurisdiction to pass upon that question cannot be doubted. It could not make distribution until it was known whether the son was born prior to or after the execution of the will, and it had, therefore, jurisdiction to determine that fact, as well as all others essential and necessary to be known in the distribution of the decedent's estate. If the will had been undated, it would not have been invalid for that reason, and in what other forum than the court below could the date of the execution have been determined? But while its jurisdiction is not to be questioned, it had before it a writing bearing a clear date, inserted by the testator himself, and the presumption that this was correct could be overcome only by clear, precise and indubitable evidence of mistake.

If this be the rule, as it is, applicable to the reformation of written instruments on the ground of mistake, it can apply to none with more force than to a will—the most solemn instrument to be executed by man or woman."

In Armstrong's Estate, 8 D. & C. 442, the will was dated July 24, 1919, and it was contended that the correct date was July 24, 1918, and that contention was upheld by the court, Judge Henderson saying after reviewing the evidence: "We are of opinion that this proof can be called precise and indubitable."

President Judge Hanna of the Orphans' Court of Philadelphia County in Smart's Estate, 3 Pa. C. C. 232, said (p. 233):

"The decision of the register then being that of a judicial officer, upon a question of fact, or a mixed question of law and fact, submitted to him upon the evidence, is therefore, *prima facie*, to be regarded as a correct conclusion. It is entitled to all the weight to be attached to the findings of an auditing judge, or the verdict of a jury, and will not be reversed except clear error be shown. In the case before us the register has found in favor of the allegations of the contestants, that the alleged will of the decedent was executed by him when he was of unsound mind and laboring under morbid and insane delusions, and therefore without testamentary capacity. It is not shown that the conclusion of the register is unsupported by the evidence or that it is contrary to the weight of the evidence. This the appellant is bound to do, as the *onus* is upon him. In the absence of such proof we cannot say the register erred."

In Robinson's Estate, 13 Erie L. J. 60, 83, Judge Clark laid down the applicable rule to be:

"An important question in this case is when was the will signed. That arose in Baum's Estate, 269 Pa. 63, supra. See page 3 of this opinion, in that case it was held that 'the presumption that this was the

correct date could only be overcome by clear, concise and indubitable evidence of mistake . . .'

"And [in] addition to this it has also been decided that the testimony 'must carry a clear conviction of its truth and be sufficient in weight to move the conscience of a chancellor to reform the instrument' Lowry v. Roy, 238 Pa. 9 (17, 18) ; Ferguson v. Rafferty, 128 Pa. 337 (355) ; Armstrong's Est., 8 Dist & Co. 442-443.

" 'Something beyond a mere preponderance of evidence is regarded as necessary in order to vary or contradict the terms of a written instrument by parol evidence' Thompson v. Schoch 254 Pa. 585.

" 'Dates in written instruments are presumed to be correct, and such instruments are presumed to have been executed at the time indicated by the date they bear . . .' Jones Evidence (3rd Edit.) page 55, Sec. 51."

We, therefore, find that the court may on sufficient evidence correct the date a will bears, but that the burden on an appeal from the decision of the register of wills and particularly where that appeal to be sustained must change the date the alleged will contains and also, therefore, change the distribution under it, is on the appellant, and that the presumption as to the date being correct must be overcome by evidence which is clear, precise and indubitable and that the testimony to move the conscience of a chancellor to reform an instrument must carry a clear conviction of its truth.

With these rules of law in mind let us examine the evidence relied upon by appellants to secure such a change in the date of this will as will admit it to probate as the last will and testament of decedent.

That the evidence taken is sufficient to establish that the date the paper bears, May 17, 1914, is not its correct date we are satisfied. In it a radio was given

to Mrs. Marie Gaudy and the evidence shows this person was not born until October 25, 1915, after the date said will bears, and became Mrs. Gaudy only upon her marriage in 1939. This paper also refers to a sister living in Walcott, N. Y., but the evidence shows that this sister did not live in that place in 1914, and the indebtedness to her brother therein referred to did not come into existence until 1930. There is a provision in this will that the class of decedent in the King Street Sunday School is to receive $45, but the evidence shows that she did not live in or near Chambersburg on May 17, 1914, and is very persuasive, and we so find, that she was not a member of a Sunday school class of that church at that time.

This evidence, to our mind is clear, precise and indubitable as to the date on the will not being its correct date and meets the burden on appellants on that branch of the case.

It having been determined that the date, May 17, 1914, which said paper alleged to be the last will and testament of said decedent bears, is not its correct date, we must determine from the evidence what was its correct date so as to decide if it was made at a later date than the will heretofore probated, that is after April 23, 1940.

We are, thus, dealing with a will which bears no date in reference to the date of the will already probated and we must decide from the evidence before us if its proper date was earlier or later than that of the probated will. Having held that the date of May 17, 1914, is not the correct date of the will bearing it, we are not bound by the rule that the date on a paper is presumed to be the correct date, and we must look to the evidence to decide what its real date is. That we have the power to determine the correct date of the paper now before us is held in Baum's Estate, supra, Sebik's Estate, supra, and Armstrong's Estate, supra.

In the case of Hengen's Estate, 337 Pa. 547 (1940), at page 550 et seq., the Supreme Court fully discussed the requirements for establishing the date of a will or codicil in reference to other wills of decedent and overruled the decision of Jacoby's Estate, 190 Pa. 382, relied upon by appellants in that case, which required a much more strict proof than now demanded under the ruling in Hengen's Estate. This latter opinion is illustrative of the trend of judicial decisions in recent years to liberalize the proof required in establishing wills of decedents so that their evident intentions in reference to the disposition of their property may be ascertained and carried out after their lips are sealed by death and what they desired can be determined only by a common-sense interpretation of that will within the established rules of law. This is well illustrated by the difference in the rule laid down in Jacoby's Estate that (p. 396) : "It will not do to show a state of facts from which it may be inferred that the execution was subsequent. . . . It is not enough that such might have been the case, it must actually have been the case"; and the rule in Glass' Estate, 331 Pa. 561, and in Hengen's Estate, supra, where it was held that certain facts shown by the evidence could be considered in deciding what inferences should be drawn therefrom in arriving at the conclusion as to the date of one will as compared with the date of another will of the same decedent. These later cases do not relieve the parties from the necessity of establishing their position by evidence but change the quality of that evidence from absolute necessity to legal inference from it.

The Hengen case is so clear and satisfactory in its reasoning and conclusion that we quote from it fully (p. 550) :

"For the contention that the writing was not entitled to probate as a codicil because it is undated and there was no proof that it was in fact executed subsequent to the will, appellant relies upon *Jacoby's Estate*, 190 Pa.

382, wherein it was said, at [page] 396, that an adequate testamentary paper having a specific date 'is incapable of destruction by any other testamentary writing unless the latter was executed at a subsequent date,' that 'it is not enough that such might have been the case, it must actually have been the case,' and that 'it will not do to show a state of facts from which it may be inferred that the execution was subsequent.'

"Inasmuch as the Court in the Jacoby Case had already concluded that the writing there in question was not testamentary in character, the language quoted was unnecessary to that decision. Furthermore, it was specifically pointed out, at page 396, that in that case all the probabilities were that the writing was signed long before the execution of the formal will.

"Even had the language of the Court in the Jacoby Case been necessary to that decision, it would have to be regarded as overruled by the decision in *Glass' Estate*, 331 Pa. 561. In that case this Court held an envelope found in testatrix's safe deposit box, containing securities and on which appeared the words 'Property of Charles C. Gearhart . . . to my executor — — Please deliver enclosed to Mr. Gearhart . . . Held for safe keeping' and the signature of the decedent, to be a valid codicil to decedent's formal will, although the paper was not dated and there was no actual proof that it was executed subsequent to the date of the will, but merely proof of facts from which subsequent execution could be inferred. The Court said, at page 564, as a necessary part of the case, that it could be legitimately inferred from the facts established by the testimony 'that the writing in question was regarded by the decedent as a "live" document, subsequent to the date of her will, . . . and that if it was a testamentary paper, it was not revoked by her will's revoking clause which expressly referred to "all other wills by me at any time heretofore made" '.

"The evidence establishes that on January 1, 1937, almost a year and a half after the date of the will, when the last interest entry was made in testatrix's pass book, the writing was not pinned therein, and further that in examining all of his mother's papers except the pass book in April or May of 1937, appellant did not find the paper in question among her effects. From this evidence and the circumstances under which the writing was discovered after the death of testatrix, which circumstances show beyond question that she regarded the writing as a 'live' document up to the time of her death, the court below was justified in finding that the paper was executed subsequent to July 20, 1935, the date of the formal will."

With this rule of law thus established, what evidence is before us to prove to us in a legal manner that the inferences to be drawn are that this will now offered for probate was executed after the one already probated and that it was considered by decedent as a "live" document after the date of the probated will?

In Hengen's Estate the paper in question was not dated, and the question before the court was whether it was executed after her probated will dated July 20, 1935. The alleged codicil was found among the papers of decedent pinned to the active page of a savings account book evidencing assets of her estate. It was in her own handwriting and signed by her but not dated. It was testified that it was not attached to that book on two different occasions after date of the will. From these circumstances it was held that decedent regarded it as a "live" document after the date of the will and it was admitted to probate.

In the instant case the paper in question was found in the pocket of a coat of decedent in her home about a week after her death, and there is no evidence, or even any intimation, that any other person had touched this coat or had any access to it, or that anyone else placed

this paper, concededly in the decedent's own handwriting, in this coat pocket, and as it was found in the home occupied by decedent alone it was clearly in her possession at the time of her death. In addition to this she had placed it in an envelope which was addressed to her at her home address and which was postmarked Rochester, N. Y., April 18, 1941, 12:30 p.m. This is conclusive evidence that she could not have placed the paper in this envelope before that date and, therefore, it must have been placed in it long after the date of her probated will, April 23, 1940, and on whatever date she may have written it she considered it a "live" document on April 18, 1941, and that being so it is entitled to probate as her last will and testament. To us this recognition of it as a "live" document is stronger in this case than in Hengen's Estate.

In addition to this we must consider other evidence before us, not perhaps conclusive in itself, but which, when considered all together and with the above evidence as to the recognition of this paper as a "live" document by the decedent, is persuasive. The decedent had spent some months with some of her brothers and had been brought to her home in April or May 1941, and the evidence shows she was then on good terms with her relatives, the natural objects of her bounty, and somewhat peeved with the King Street United Brethren Church, who were the sole residuary legatees in the will she then had executed; she went to the hospital, where she died on June 27, 1941, after being there about three weeks, which would bring her admission to that institution near the early part of June. If this will was dated May 17, 1941, it can well be that she was preparing her worldly affairs in light of what might, and did, happen, her death in the hospital, and as she had but recently left her nearest relatives, what more natural than that she should think of caring for them?

Now was the correct date of this will May 17, 1941, instead of May 17, 1914, and can we so determine from all the evidence in the case? We think we can. In the first place the date on the envelope is very persuasive evidence to that effect. An envelope received by a woman living alone in the country on April 18th would be likely to be convenient to use when she prepared a paper on May 17th and wanted a receptacle in which to place it as she did. In addition to this, the paper itself is a silent witness to the likelihood of the woman to make a mistake in her figures. It is testified to and not contradicted that her sister, Ethel Poorman, was indebted to her brother Harry Kitzmiller in the sum of $125 and that decedent was familiar with that fact, yet in her will she wrote that amount $1.25. If she was mixed in her figures in the one matter, unable to put them down on paper correctly, we may well assume she was likely to make a similar mistake in writing other figures, and that the date she intended to write was 1941, not 1914, an impossible date under the circumstances. We will, therefore, hold that this will was written on May 17, 1941, not May 17, 1914, and, therefore, after the will already probated and that the appeal must be sustained, the probate of the will dated April 23, 1940, be stricken off and the paper bearing date of May 17, 1914, correct date May 17, 1941, be admitted to probate as the last will and testament of Eleanora Bittinger, deceased.

Now, May 15, 1943, appeal sustained and ruling of register of wills reversed and the decree of probate of the will of Eleanora Bittinger dated April 23, 1940, is opened, and the probate of said will is directed to be stricken off and canceled, and the paper bearing date of May 17, 1914, is decreed to be of the correct date of May 17, 1941, and it is ordered and decreed that said paper be admitted to probate as the last will and testament of Eleanora Bittinger, late of Hamilton Township, Franklin County, Pa., deceased.