Bessen Bros., Inc., Appellant, *v.* Brooks.

Argued March 18, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*A. Samuel Buchman,* for appellant.

*Lester L. Dolfman,* for appellee.

OPINION BY WOODSIDE, J., August 30, 1954:

This comes before us on appeal from the refusal of the Municipal Court of Philadelphia to enter judgment non obstante veredicto or grant a new trial after a verdict for the defendant by a jury.

The plaintiff brought an action in assumpsit to recover $675 with interest as the value of a fur coat which had been obtained by defendant from plaintiff. At the time of receiving the coat the defendant signed

what was termed a "Memorandum Receipt." It was in the following form:

"from Bessen Bros. incorporated Manufacturing
Furriers

350 Seventh Avenue New York 1, N. Y. Sept. 7, 1949

All shipments will be made collect and at full value unless written instructions to the contrary are given.

To Harry Brooks        Address 210 W. Chelten Ave.
Ship Via . . . .                    Phila., Pa.
Memorandum Receipt as Below:    This is NOT AN
    INVOICE

|  |  | Value |
|------|------------|-------|
| 2068 | 1 Beaver Ct | 475 |
| 3086 | 1 Beaver Ct | 675 |
|  |  | B |

FOR INSPECTION ONLY

(E)

"MEMORANDUM. THIS IS NOT AN INVOICE. The above listed merchandise is received for inspection only and will be returned upon demand to BESSEN BROS., INC.

"The transferee assumes all risk of loss or damage by theft, robbery, fire, or negligence, and will fully insure this merchandise for the account of BESSEN BROS., INC.

"It is understood and agreed by the transferee that nothing contained in the memorandum shall be construed to be an extension of credit or to vest in the transferee any right or authority to transfer the said merchandise to any other person or concern, whether on memorandum or otherwise.

"Sale of the above listed merchandise takes effect only from date of written approval of your selection by BESSEN BROS., INC. and issuance of regular invoice.

"No delivery or transfer of the above listed merchandise shall be deemed to pass any title or interest in this merchandise to the transferee or subsequent holder thereof until BESSEN BROS., INC. issues a regular invoice for same and receives the purchase price mentioned in such invoice. The rendering of an invoice unless otherwise indicated shall vest only a conditional interest and shall become absolute only upon receipt of the purchase price in full by BESSEN BROS., INC.

"Merchandise must be returned charges prepaid and insured at full value for the account of BESSEN BROS., INC.

"Received by HARRY BROOKS"

One of the coats listed above was returned to plaintiff by defendant. At the trial there was evidence that the other one, valued above at $675, was stolen while in the possession of the defendant and being exhibited by him in a store window. Because of the jury's verdict for the defendant we must assume this to be true. It is for the value of this coat that the action was brought.

There is no question that the coat was received by the defendant; that he signed the above writing; that the coat was neither returned nor paid for by defendant although demand had been made upon him for it.

Under such circumstances the defendant would seem to be liable under the following clause in the above writing: "The transferee assumes all risk of loss or damage by theft, robbery, fire or negligence, and will fully insure this merchandise for the account of Bessen Bros., Inc." . . . .

Defendant alleged in his answer that the question of insurance was discussed at the time of signing the above writing and Morris Bessen, treasurer of plaintiff corporation, had said the coat was insured by the

plaintiff and it was not necessary for the defendant to insure it and that Bessen told the defendant the above clause would be stricken from the contract, and that if it was not deleted and removed "it was solely through the mistake of the plaintiff."

At the trial the defendant testified that he signed the above document knowing the above quoted clause was in it. He testified "I told (Mr. Bessen) I don't have any insurance. He said, 'You don't need any, I have insurance.' So I said, 'Now will you scratch this out?' In the meantime it got busy there. So the coats were packed up by the shipper and I took the coats. But before I left I said, 'Now don't forget to scratch that out,' He said, 'It's scratched out. Go ahead now. It's scratched out. Don't worry about it I gave you coats before.' "

When the defendant was asked why he did not strike the clause out with his own pencil at the time he signed the writing he replied, "I'll tell you why, because the whole place there is a dizzy house. You can't talk to those people. They are excitable. It is noisy. It is this and that. You are glad to get out of there."

Mr. Bessen, on behalf of the plaintiff, testified there was no conversation between the defendant and him concerning insurance or about striking out the aforesaid clause and that the plaintiff did not carry insurance on the coat in question.

The trial judge considering the above document a "receipt" and believing the Parol Evidence Rule inapplicable, admitted the above evidence of the defendant over the objection of plaintiff and permitted the case to go to the jury on the theory that the terms of the agreement depended upon whether the testimony of Brooks or Bessen was to be believed. No weight was given to the writing signed by the defendant. The trial

judge further instructed the jury that there was no evidence of the lack of the degree of care required by a bailee for mutual benefit, although after exception the question of defendant's negligence was left to the jury.

The plaintiff having filed a point for binding instruction, later moved for judgment non obstante veredicto and for a new trial. The court below reviewed the law relating to the Parol Evidence Rule at great length and concluded that the writing signed by the defendant was merely a receipt and not the complete and accurate integration of the contract of the parties.

The court summarized its position as follows: "The issue raised is the integrity of the memorial as averred by the plaintiff and its mistaken or fraudulent use by the plaintiff. The evidence presented by both parties upon the issue thus raised was the testimony of the plaintiff's treasurer and the defendant. The question of credibility was solely for the jury. The jury found for the defendant."

The Parol Evidence Rule as to written contracts does not apply to mere receipts which by their terms are only written acknowledgments, handed by one party to the other, of the manual custody of money or other personalty, because they are not intended to be exclusive memorials. But this has no application where the receipt itself contains provisions constituting a contract between the parties. Nor does the fact that the paper is signed by only one of the parties keep it from being a written contract. *Wagner v. Marcus,* 288 Pa. 579, 136 A. 847 (1927).

It seems to us that the "Receipt" signed by the defendant in this case was a contract in which Brooks obtained custody of the coat and became a bailee thereof in accordance with the terms of a written agreement. Under the terms of the agreement he assumed all risk

of loss by theft, and agreed to return the coat to the plaintiff upon demand. That it was called a receipt does not keep it from being a contract.

The signed agreement provides that two specific and identified coats are to be received by the defendant for inspection and upon demand are to be returned to the plaintiff, charges prepaid and insured. This is a complete contract and creates a bailment subject to the terms of the written agreement. The fact that there is a contemplated sale of the goods by Brooks at some future time does not change the status of the written agreement into a mere receipt or keep it from being "an integral documentary unit."

Even if there would be only partial integration—in other words integration of a bailment agreement but most of a contemplated future sale agreement—the rule against disputing the terms of the document would be applicable to so much of the transaction as is embodied in the document, but not to the remainder. Wigmore on Evidence (Third Edition) Vol. IX, Sec. 2430, Page 97.

In the absence of any allegation of fraud, accident or mistake, a written contract constitutes the agreement between the parties and its terms cannot be added to or subtracted from by parol evidence. *Gianni v. Russell & Co. Inc.*, 281 Pa. 320, 126 A. 791 (1924); *O'Brien et al. v. O'Brien*, 362 Pa. 66, 66 A. 2d 309 (1949).

The writing becomes not merely the best evidence but the only evidence. *Martin and Monroe v. Berens*, 67 Pa. 459 (1871); *Irvin v. Irvin*, 142 Pa. 271, 21 A. 816 (1891).

Before parol evidence of fraud can be introduced it is necessary that fraud should be alleged in the pleadings; *Federal Sales Co. of Philadelphia v. Farrell*, 264 Pa. 149, 107 A. 668 (1919); *Dinch v. Work-*

*man,* 84 Pa. Superior Ct. 39 (1924), but it is not necessary to allege it in direct terms, providing a statement of fact clearly shows fraud. 32 C.J.S. Evidence §979, Page 951.

Where fraud or mistake is alleged and proved, it then becomes proper to admit testimony to show the real agreement between the parties, but without proof to establish the fraud or mistake it is not proper to permit the introduction of parol evidence to contradict the writing which purports to contain the contract between the parties. *First National Bank v. Sagerson et al.,* 283 Pa. 406, 129 A. 333 (1925).

Assuming (although it may be questioned) that the defendant's averment is sufficient allegation of fraud, then the testimony of the defendant concerning the alleged promise of the plaintiff to strike out the clause would be admissible to establish the fraud. But such evidence must be clear, precise and indubitable; otherwise it should be withdrawn from the jury. *Aliquippa National Bank v. Harvey, Exrx.,* 340 Pa. 223, 231, 16 A. 2d 409 (1940); *Gerfin v. Colonial Smelting & Refining Co. Inc.,* 374 Pa. 66, 67, 97 A. 2d 71 (1953).

"Whether the evidence is true is a question of fact . . . but whether it meets the required standard which justifies its submission to the jury is always a question of law; . . ." *Ralston et ux. v. Philadelphia Rapid Transit Co. (No. 1),* 267 Pa. 257, 269, 110 A. 329 (1920); *Gerfin v. Colonial Smelting & Refining Co. Inc.,* supra.

As was said in *Pennsylvania Railroad Co. v. Shay,* 82 Pa. 198, 203 (1876) "It has been more than once held that it is error to submit a question of fraud to the jury upon slight parol evidence to overturn a written instrument."

It is our opinion that the evidence presented by the defendant did not meet the required standard to establish fraud.

There is nothing to support the defendant's allegation except his own uncorroborated statement.

In *Thompson v. Schoch,* 254 Pa. 585, 589, 590, 99 A. 72 (1916) the court said: "It is established with us that the testimony of a defendant standing alone, is insufficient materially to modify the plain terms of a written instrument sued upon; that, before such testimony can be permitted to have this effect, it must be corroborated by other witnesses or proof of confirmatory attending circumstances."

This was quoted and followed in *Schmitt v. William G. Johnston Co.,* 136 Pa. Superior Ct. 213, 218, 7 A. 2d 131 (1939).

Under the clause in question the defendant accepted two related but separate obligations; one, to assume all risk of loss or damage by theft, robbery, fire or negligence, and the other, to insure the merchandise for the account of plaintiff. See *Com. ex rel. Nelson-Pedley Const. Co. et al.,* 303 Pa. 174, 154 A. 383 (1931).

Under the testimony of the defendant it is not clear whether the discussion between him and Bessen related solely to insurance or whether it related to the assumption of risk as well. To establish fraud the evidence should be clear and precise.

In *Thompson v. Schoch,* supra, Page 590, the court said the evidence relied upon must be "so intrinsically probable, that the judicial mind can rest thereon with a conviction that the ends of justice would be served by giving it effect . . ."

Defendant admitted he had signed similar agreements for the plaintiff before, had a copy of this one, knew that the clause in question was in it when he signed the agreement; and did not cross it out "because the whole place is a dizzy house . . . you are glad to get out of there."

This was not a long agreement; the clause was easy to find. He talked to Bessen about it several times. It is difficult to believe that in signing the agreement he would not have himself crossed out the clause had that been the understanding.

The testimony of the defendant lacks the intrinsic probability referred to above.

Furthermore, it has been held that where a person sought to be bound by a writing has carelessly signed such writing without reading it, the court should not relieve such person from the results of his own gross negligence. 32 C.J.S. Evidence §978, Page 941. See *Marmon Phila. Co. v. Blocksom,* 103 Pa. Superior Ct. 542, 157 A. 510 (1931).

Here the defendant was not deceived as to what was in the document. He knew what was in it. By the mere stroke of a pen at the time he signed the document he could have crossed out any part to which he had not agreed. Failing to strike out what he knew was in the writing and knew was contrary to the agreement between the parties would involve a greater degree of negligence than not knowing what was in the writing.

What was said in *Eareckson v. Hoyt,* 58 Pa. Superior Ct. 531, 534, 535 (1914) is applicable here. There the court said: "We have but a frank and simple undertaking, by one party to a written contract, to expunge and obliterate therefrom the provisions affecting its most vital covenants and to substitute therefor others, resting in parol, covering precisely the same subject-matter, and destructive of the obligations solemnly and knowingly inserted in the written instrument. We know of no principle of law or rule of reason that would sanction such an attempt . . .

"If we ever reach the point where men may so easily relieve themselves of their written obligations, the lat-

ter will become worse than worthless and the chief reliance of men, in their business activities, will be greatly impaired if not entirely destroyed."

A review of how Pennsylvania drifted away from the common law Parol Evidence Rule and, finding its unchartered course plagued with shoals and cross currents, finally worked its way back to the rule can be found in *Speier v. Michelson,* 303 Pa. 66, 69, 154 A. 127 (1931). Justice KEPHART, later Chief Justice, there said:

"Early in our legal history our courts broke away from the strictness of the English rule forbidding evidence of contemporaneous oral agreements to be introduced to vary the terms of a written agreement . . . The Parol Evidence Rule was steadily widened so that almost any promise was sufficient to invade the security of a written contract. Constructive fraud was created from mild excuses, and it was acknowledged in Fuller v. Law, 207 Pa. 101, that our efforts to prevent the abuse of the liberality of the Parol Evidence Rule had not met with success. The court, in Gandy v. Weekerly, 220 Pa. 285, continued its policy of liberality.

"The net result of this liberality was not to open but to break down the door which barred the admission of oral evidence to vary a writing . . .

"The first step to return to the strictness of the old rule, or, as it has been stated, the beginning of the modern Parol Evidence Rule, was in Second National Bank of Reading v. Yeager, 268 Pa. 167. The effective decisions were in the *Gianni* case, supra, and in First National Bank v. Sagerson, 283 Pa. 406; the principles there announced cut away the dead timber from the Parol Evidence Rule as reflected in our earlier cases. The rule started with a new aspect—a definite

respect for written instruments."[1]

We think a directed verdict should have been entered for the plaintiff in this case.

Judgment reversed and here entered non obstante veredicto for the plaintiff in the sum of $675, with interest.

[1] For recent judicial interpretation of *Gandy v. Weekerly* cited by Justice KEPHART above see *Grubb v. Rockey*, 366 Pa. 592, 596, 597, 79 A. 2d 255 (1951).